Chief Justice Robertson
delivered the Opinion of the Court.
Olivér Brown, the appellant, owning a tract of land near Versailles, and on each side of the road leading to Lexington, sold, on the 19th of March, 1831, to James Parish, a triangular piece, detached by the road from the residue of the tract and adjoining the land of Parish; and, in April of the same year, conveyed the legal title, by a deed reciting the payment of the consideration— *7 three hundred dollars — describing the boundaries by-courses and distances, and designating the land, without any allusion to quantity, “ as being the piece of land known by the name of Brown’s Cut Mine-pence, be the same more or less.”
Allegations of the bill.
The answer— and the facts in proof.
Afterwards, in August, 1831, to obtain appropriate relief, Brown filed a bill in chancery, alleging that, when he sold the land, he supposed that the quantity was about eight acres; that he had since ascertained that the boundary contained seventeen acres and a quarter ; that, in the contract, each party estimated the land at thirty five dollars per acre, and, therefore, three hundred dollars was the stipulated consideration ; and that, prior to the contract, Parish had, by clandestine means, ascertained the actual quantity of acres, but fraudulently concealed his knowledge of that fact) although he knew that Brown was not willing to take less than thirty five dollars an acre.
All the material allegations of the bill, except as to the actual quantity of the land, were denied ; and the proofs read on the hearing of the cause, éstablish the following, and no other material facts. First. The land was sold and was conveyed, in gross, by its name (“ The Cut Mine-pence”) and by its boundaries only. Second. Between the date of the contract and that of the conveyance, Parish had, more than once, endeavored to ascertain the quantity by stepping, and had an actual survey made by a surveyor. Third. After thus ascertaining the quantity to be seventeen and a quarter acres, Parish said-he had not expected that there was so much ; that he supposed, when he made the contract, that the quantity was about nine acres, and that he was apprehensive that Brown would, if he ascertained the true quantity, re=fuse to convey the entire triangle. Fourth. Brown having been asked (before he ascertained the quantity, as we infer,) whether he had sold the land,by the acre, and for how much an acre, answered that it was a lumping ■ bargain;” and then, to the interrogatory, “ suppose there are not more than four or five acres ?” he answered, uit was a lumping 'bargain.” Fifth. Parish having prepared a deed, describing the true quantity, and the courses and *8 distances as ascertained by the surveyor, presented it, together with the plat of the survey, to Brown, who insisted that the surveyor was mistaken ; offered to bet a large sum that the boundary did not contain as much as seventeen acres ; said that he had not sold, and never would have sold, the land by the acre, but had sold it “ as the piece of land known as the Cut Nine-pence, for a certain sum,” and thereupon, having had the. quantity erased, he signed and delivered the deed.
Fraud or mistake in making a contract, must be established, to justify a decree for rescission ,or relief on the ground" of advantage obtained by one of the parties.
No proof of fraud in this ease.
The proof of a icient^ mSUÍ"
The circuit court dismissed the bill, and this appeal is prosecuted to reverse that decree.
If the appellant be entitled to any relief, his equity must result from either fraud or mistake, or both combined.
The imputed fraud has not been established. It is not here necessary to discuss or decide the question whether, if Parish h,ad known, by actual' mensuration, the true quantity of land, (Brown believing that it did not exceed nine acres,) the failure to communicate the fact would have been that species of suppressio veri which is deemed fraudulent ; for there is no proof that Parish had, at the date of the first agreement, ascertained the quantity, or knew that it exceeded or equalled nine acres; and the information, which he afterwards obtained, was communicated to Brown before he subscribed his name to the deed; and although Parish expressed the apprehension that Brown would not convey if he know the true quantity, yet no artifice was used for concealment or delusion ; but, on the contrary, the deed recited the courses and distances and quantity truly, as they had'been ascertained by actual survey, and the plat of the survey, exhibiting all the same facts in a more authentic form, was shewn to Brown before he executed the contract.
Nor is there satisfactory proof of any such gross and Pa^Pa^e mistake as would justify a decree for any relief.
The question is not whether an executory agreement should be specifically enforced ; but whether an executed agreement shall be modified and reformed.
The deed ofland conveyed is the best evidence of the terms of sale, and must prevail (as evidence of the contract) unless there is clear proof of fraud, or of some mistake — such as would never occur without great want of heed in the complaining party.
A party, for u sum ceitain, sells a piece of laud, by its known name Sr boundaries, refusing to stipulate for, or to state, the quantity. The vendee, before the execution of the deed, ascertains the trae quantity — but practises no fraud nor any concealment about it. Though the piece contains more than twice as much in fact, as the' vendor supposed, be must abide the consequence of his inadvertency ,havingno remedy, or cause of complaint.
The deed is the highest evidence of what the contract was ; it cannot be contradicted by testimony of an inferior grade ; and therefore, to justify a decree for any relief against its legal effect, on the ground of mistake merely in its execution, the proof, must be clear and conclusive, and the mistake not only.gross and palpable, but such as could not have occured had not the party complaining been reprehensibly supine, or unreasonably credulous or incredulous, as to the truth and import of facts of which he had notice.
In this case, there is no such proof of any such mistake. The conveyance is not of a tract of land of designated quantity, "more or less” — but is simply a deed for a specified boundary of a tract of land designated by its name, and containing no specified quantity, either ascertained, stipulated or conjectured, it has been said, arguendo, by our predecessors, that, against such a deed, no mere mistake as to quantity (when there is no artifice .or misrepresentation,) would authorize a decree for relief. Conceding that the principles of equity might justify relief against such a deed on such ground, in a possible case, we are nevertheless satisfied that such a case can but seldom arise, and must, when it presents itself, be characterized by peculiar circumstances of extraprdinary mistake and indubitable hardship.
Here the appellant would not sell his land as a tract of any definite quantity of five, six, seven, eight, nine or ten acves. He said he supposed that the triangle contained about seven, eight or nine acres, but that he would sell it "in the lump,” and in no other way ; and that, if it contained only four acres, still it was a sale "in the lump.M Had there been only four or five, instead of eight or nine acres, would lie have held himself liable, by contract or in honor, for the deficit ? The facts will hardly allow such a presumption. Then a duplication of his, conjectural quantity should not entitle him to redress in a court of conscience. The facts .tend to prove, in corroboration of" tbe deed, that (for three hundred dollars,) he sold his “ Cut Nine-pence” — his whole Cut Ninepence — whatever it might contain, or whatever it might be worth. He has not even proved that the seventeen *10 and a quarter acres are worth much more than three hundred dollars; and there is not a semblance of proof 'that eight acres were worth as much as that sum.
But had there been satisfactory proof of a gross and injurious mistake, as to.quantity, in the execution of the contract, the appellant would not have presented a case within the equitable rule. He would not know the quantity of land he had sold and was about to convey. Even after the deed and the plat, both giving the courses and distances and the true quantity, had been seen by him, he persisted in the determination to convey as he had sold---by the boundary and that only. It seems to us clear, therefore, that he has no just cause for appealing to the chancellor to be relieved from the consequences of such a contract. All the extraneous facts, properly considered altogether, do not contradict, but tend to confirm the legal import of the deed: that is, that Brown was indisposed to an ascertainment of the precise quantity, and a sale by the acre for the actual vendible value, but preferred a “ chancing bargain” for three hundred dollars, for the “ Cut Nine-pence,” whatever it might contain. He has not shewn any equitable ground for obtaining relief from such a contract, which he seemed inflexibly predetermined to make, and which he executed in the face of light and knowledge.
Decree affirmed.