## STANLEY v. GREEN et al.

The evidence of the circumstances under which a deed was executed is admissible beyond question. These circumstances place the Court in the position of the parties, and enable it to interpret·intelligently the language used by them. It is not to contradict or vary the terms of the instrument that the evidence is received, but to apply them to the subject matter. For this purpose, extrinsic evidence must be admissible in the interpretation of every instrument; and the law will not declare the instrument void for uncertainty until it has been examined with all the light which cotemporaneous facts may furnish. If these render the intention clear, and the words of the instrument are, by fair rendering, susceptible of a construction to uphold such intention, then they will be so construed, and the instrument enforced.

The declarations of the grantor are admissible, not only as against himself but against parties claiming under him. The subsequent claimants are considered as standing in his place, and as having taken the title *cum onere*, subject to the same changes and restrictions which attached to it in his hands. It matters not whether the declarations relate to the limits of the party's own premises, or the extent of his neighbor's, or to the boundary line between them, or to the nature of the title he asserts. If their purport is to restrict his own premises, or lessen his own title, they are admissible.

Where the declarations of the grantor controlled the conduct of the grantee in the purchase of land, the grantor, and those subsequently claiming under him, are ·estopped from the assertion of any interest in the land in opposition to the title of such grantee.

The assertion of quantity in a deed must yield to a description by metes and bounds, or by name or number.

In the description of the land conveyed by deed, designation of the tract by a particular name or number is sufficient; and if it can be rendered certain by extrinsic evi-

Stanley *v*. Green.

dence, this is as good a description as one by metes and bounds. It is undoubtedly essential to the validity of a conveyance, that the thing conveyed must be described so as to be capable of identification; but it is not essential that the conveyance should itself contain such a description as to enable the identification to be made without the aid of extrinsic evidence.

No seal was requisite under the civil law. Any instrument which contained the names of the parties, a designation or°description of the property sold, the date of the transfer, and the price paid, was sufficient to pass the title.

Where a person purchasing land has actual notice of a former conveyance of the same land, he is not entitled to protection as a purchaser for value without notice ; nor are his partners in the purchase, although they at the time knew nothing of such purchase.

A party in taking a conveyance in the name of his associates, must be considered as having acted as their agent, and notice to him is equally notice to them.

APPEAL from the Seventh District, County of Napa.

This was an action of ejectment. The cause was tried by a jury, and verdict and judgment for the plaintiff. Defendants moved the Court for a new trial, which was denied, and they appealed to this Court.

A statement of facts sufficient to elucidate the points decided, appear in the opinion of the Court.

*Crocker, McKune, Robinson and Curry* for Appellants.

I. The description in the deed from Higuera to Fallon, under which plaintiff claims, is as follows :

" A certain quantity of land lying, being and situate in the district and territory above mentioned, (District of Sonoma, and Territory of Alta California) in the valley of Napa, containing more or less *one mile square of land* in the place known as the ' Rincon de los Cameros,' commencing in the wagon road and ending at the point of the hill at the east. To have, etc."

Under this description we contend—

1st. That in any event it does not convey more than " one mile square."

2d. That it is so uncertain and indefinite, that even that amount cannot be located with any certainty, and it is therefore void.

The most definite terms in the description are—" a certain quantity

of land" containing more or less "one mile square of land;" and, although as a general rule, quantity is not usually material in a description, yet where the boundaries are doubtful it becomes material, as it affords evidence of the intention.     4 Phil. Ev. ; C. & H. notes, 550 ; 3 Murphy, 539 ; 4 Devereux, 374 ; 2 Caine's, 146 ; 11 Illinois, 279 ; 2 Richardson (S. C.) Rep. 543 ; Cooke, 460.

Words indicating quantity yield when they conflict with words of more accurate description ; otherwise they are part of the description, and are not qualified by the words more or less.     Pierce v. Torrence, 37 ; Maine, 63.     And words of quantity may be the most essential part of the description, as—seventy acres lying and being in the south-west corner of a certain section.     The seventy acres will be laid off in a square.     2 Hammond, 327 ; Wright, 366.     So a deed of "my acre lot," the grantor having an acre and a half acre lot.     4 Devereux, 370.     So, in the present description, it was evidently the intention of the parties to sell and convey "one mile square of land in the Rincon de los Cameros ;" and if it had been their intention to convey the whole Rincon, they would have expressed it in very different terms.

But respondent urges that these words respecting quantity should be rejected as false.     If this is done, you reject the only portions which are in any way definite or certain.

But he insists that the words "more or less" show that it was not the intention to limit it to one mile.

We admit that the authorities sustain the following position : that where the description clearly conveys a certain tract of land by clear, well-defined boundaries, the whole tract will pass with or without the words "more or less ;" subject, however, to be corrected by a Court of Equity in cases of fraud or mistake.     But the decisions limit it to cases where the boundaries are certain and definite.     Where the description is uncertain as to the boundaries, then quantity becomes material in ascertaining the intention, and the words "more or less" will not qualify it.

In the case of the United States v. Fossatt, 20 Howard, the words "more or less" were rejected as surplussage, for this reason : as one of the boundaries could only be located by taking the quantity specified as a guide.

These words cannot be construed to enlarge the boundaries mentioned in the deed.  3 J. J. Marshall, 421.

For these reasons we insist that the claim of plaintiff must be limited to one mile square.  But the description is so uncertain and indefinite that it is impossible to locate even one mile square with any reasonable certainty ; and the paper, therefore, is entirely void for uncertainty.

It says, " commencing at the wagon road," but it fails to state at what point on the wagon road it is to commence.  Plaintiff claims that this point is the " crossing of Cameros Creek ;" but if such was the intention, it would have been easy to have so expressed it ; and the fact that it was not stated is conclusive that such was not the intention.

This Court, in Mesick *v.* Sunderland, 6 Cal. Rep. 297, has laid down the rule upon this subject with clearness and precision.  It says : " The thing granted cannot vest in parol, but must be shown with that distinctness of description that will enable it to be identified.

" The general rule upon this subject is, that every conveyance must, either on its face, or by words of reference, give to the subject intended to be conveyed such a description as to identify it ; if land, it must be shown so as to afford the means of locating it.  Neil *v.* Hughes, 10 Gill & Johns. 7."  Again, it is said that " if the description in a deed be so imperfect that it cannot be understood what land is intended to be conveyed, the deed is void."

To the same effect are the following :   2 Parsons on Contracts, 72 ; 4 Bacon Abr. Grant (H), 521 ; 4 Comyn's Dig. Grant E, 14 ; 4 Kent, 452 ; Adams' Ej. 25 and notes.

In entries of public lands it is held, that they must be located so precisely that others may be able with certainty to locate other tracts upon the adjacent residuum, or they will be fatally defective.   1 Wheaton, 130 ; Ken. Dec. 66, 231 ; Hardin, 89, 261 ; 6 J. J. Marsh, 253 ; 1 A. K. Marsh, 605 ; 2 A. K. Marsh, 409 ; 3 A. K. Marsh, 195 ; 3 Littell, 438.

We give the following instances of defective descriptions :

1 Cowan, 285 : The deed merely described various lines, but they did not close, and no land was actually included in the supposed boundaries.

An entry gave a base line sufficiently certain, and " then at right angles from the extremity of each line," was held invalid, because it

did not state on which side of the base line the land was to lie.  5 Littell, 182.

" 640 acres, beginning on the dividing ridge of the counties of, etc., at a point at or near Lowe's Bear Pen on the H. mountain, and then running various courses." Held too indefinite, except as to quantity. It cannot be told whether it is to be laid out by running east or west on the county line, nor how far in either direction.  4 Indell.Eq. 85.

" 10,000 acres of land in the district or bank of the River Nassau." It cannot be told on which side or on what part of the river it is located. 15 Peters, 173.

" 50,000 acres of land south and north of Mosquito." Mosquito was an inlet sixty miles long, and it cannot be told on which side or part of the inlet to locate it.  15 Peters, 223.

" 30,000 arpents, sixty miles above the Osage, on the south side of the Missouri river, in which quantity should be comprised a Lead Mine and also the Salt Springs." A surveyor could lay it off in one hundred different shapes so as to answer every call in the grant.  13 Missouri, 430.

" Five acres in Section 24." Held impossible to know in what part of the section the particular five acres are located.  14 Howard, 76 ; citing numerous cases of defective descriptions.

" Part of a tract of land called the Cow Pasture." It does not state the quantity nor the particular place.  10 Gill & Johns. 10.

" A certain tract or parcel of land lying, being and situate in the County of Jackson, on the sea coast on the west side of Biloxi, containing one hundred and seventy-three acres." 3 How. Miss. 230.

" Two leagues square, to include the whole of the prairie Lianoccoco." 11 Howard, 125.

The following is a list of cases in which deeds *between parties* have been held void for uncertainty:  13 Johns. Rep. 97, 537, 551 ; 1 Cowen, 285 ; 1 Pick. 31 ; 4 Mass. 205 ; 10 Serg. & Rawle, 357 ; 1 N. H. 93 ; 6 N. H. 424 ; 8 N. H. 31 ; 13 Smedes & Marshall, 318 ; 3 How. Miss. 230 ; 10 Ohio, 44 ; Wright, 51 ; 4 Harr. & Johns. 446 ; 5 Harr. & Johns. 1 ; 10 Gill & Johns. 10 ; 4 Devereux, 373 ; 12 Georgia, 431 ; 2 Harr. & Johns. 498 ; 13 Missouri, 430 ; 1 Harper, 300 ; 5 Indell Eq. 373 ; 4 Indell Eq. 85.

Stanley *v.* Green.

Public grants and entries held void for uncertainty of description : 3 Peters, 96 ; 6 Peters, 345 ; 10 Peters, 329 ; 15 Peters, 173, 223, 283, 334, 93 ; 16 Peters, 157 ; 5 Howard, 26—29 ; 8 Howard, 309 ; 10 Howard, 556–557 ; 11 Howard, 63, 125, 97, 329 ; 13 Howard, 267 ; 14 Howard, 76 ; 8 Peters, 75 ; 2 Wheaton, 316 ; 11 Wheaton, 215, 226 ; 10 Wheaton, 454 ; 7 Wheaton, 158 ; 1 Wheaton, 130 ; 5 Cranch. 191 ; 1 Bland. 299, 331 ; Hardin, 190, 261, 472, 89 ; 2 J. J. Marsh, 344 ; 5 Monroe, 364 ; 6 Monroe, 62 ; 1 A. K. Marsh, 272, 273, 275, 604 ; 2 A. K. Marsh, 184, 409 ; 3 A. K. Marsh, 188, 194, 195 ; Ken. Dec. 285, 66, 231 ; 6 J. J. Marsh, 253 ; 3 Littell, 438, 100, 148 ; 1 Littell, 399 ; 2 Litt. 33, 35, 161 ; 2 Bibb, 499 ; 1 Bibb, 17, 121 ; 3 Bibb, 156 ; 5 Litt. 182 ; 3 Haywood, 213 ; 4 Haywood, 136 ; 9 Wheaton, 573.

II. Error in admitting parol evidence to show what land was intended to be conveyed by the writing executed by Higuera to Fallon.

We do not pretend that *no* parol evidence is admissible when a deed is given in evidence to a jury.   We admit that such evidence may be given to show the situation of the parties, to identify the natural or artificial monuments or localities mentioned in the deed ; and, if a survey is referred to in a deed, to show where the lines of such survey were actually run, or that a portion of the description is false in fact, and matters of the like character.   But not to show what land was sold, or intended to be sold, or to cure an insufficient description, or to *add* to or *vary* the terms used in the description.   Mesick *v.* Sunderland, 6 Cal. Rep. 297.

Parol evidence is not admissible to vary or add to the terms of a written contract.   1 Cal. Rep. 129, 337 ; 2 Cal. 37 ; 7 Cal. 282 ; 8 Cal. 414, 431 ; 9 Cal. 538.

It is urged, that this paper having been executed prior to the organization of the State, it is governed by the Mexican law, and that it would be good and sufficient under that law.   But this Court has distinctly held, that under the Mexican law the writing must contain at least the names of the parties, the thing sold, the date of the transfer, and the price paid.   Hays *v.* Bond, 7 Cal. 157 ; 1 Cal. Rep. 119, 207, 98 ; Stafford *v.* Lick, July T. 1855 ; Union Rep. 148.   And

these are the essential requisites of a conveyance under our American law.

III. The admissions and declarations of Higuera are inadmissible.

In no case is a declaration by the grantor as to his intentions in using the words in the deed allowed to be received as evidence. 2 Phil. Ev. 282, 285, 300, 326, 332, 334; 4 Phil. Ev., C. and H. notes, 534.

Parol evidence, that at the time of making the deed the parties were on the land, and the grantor pointed out a place as the boundary, is inadmissible. Peasely v. Gee, 19 N. H. 273.

But it is urged that Higuera, and all claiming under him, are estopped by these alleged admissions. We admit that there are cases where a party and his privies are estopped by his admissions; but this is only where the subject matter of the admission is a subject of parol proof. But where the law requires the subject matter to be in writing, as in this case, then parol proof even of a solemn admission is not admissible.

Admissions to operate as an estoppel must be such as relate to matters which may be proved by parol, and do not apply to such as can only be proved by written evidence. Mason v. Clark, 3 Scammon, 532; 2 Scammon, 48 and 49; 3 Phil. Ev., C. and H. notes, 266.

There are cases, also, where parties have been in possession of adjoining tracts, and their acts and admissions respecting the location of the boundary lines between them, have been held to operate as an estoppel; but these cases do not apply here, because there never was any actual possession of any tract by Fallon under this paper, or any of those claiming under him.

This parol evidence of Fallon is clearly inadmissible, for all previous representations pending the negotiation for the purchase are merged in the conveyance. The instrument contains the final agreement of the parties; and by it, in the absence of fraud, their rights and liabilities are to be determined. Peabody v. Phelps, 9 Cal. 213.

IV. The paper to Fallon not being under seal conveyed only an equity, and the plaintiff counts upon a legal title. Clark v. Elvey, 11 Cal. 154; Dupont v. Wertheman, 10 Cal. 354.

V. Defendants had no notice of the paper to Fallon.

There are two kinds of notice: 1st. Actual; 2d. Constructive.

This Court has already held, in numerous cases, that the only kind of constructive notice permissible under our registry laws, is that arising from the recording of the conveyance under the statute.    Call *v.* Hastings, 3 Cal. Rep. 179 ; 6 Call, 297 ; Bird *v.* Dennison, 7 Cal. 297 ; Stafford *v.* Lick, 7 Cal. 479.

And that deeds made prior to the Registry Law must be recorded to give constructive notice.    Call *v.* Hastings, 3 Cal. Rep. 179 ; Stafford *v.* Lick, 7 Cal. 479.

There is not the least evidence, or the least pretense, that Crocker & Robinson ever had the least intimation that Fallon ever had any deed.

Purchasers without notice will be protected as well at law as in equity.    1 Story Eq., secs. 165, 381, 434.

Purchase by one who had notice of one who had no notice, will be protected.    1 Story Eq., secs. 409, 410.

Implied or constructive notice of a prior deed must be, not merely a probable but a necessary inference from the facts proved.    3 Pick. 149.

Actual notice must be actual knowledge of the conveyance.    6 Cal. Rep. 670.

Fallon, or those claiming under him, never had possession ; so the doctrine of constructive notice by possession does not apply.

In Massachusetts and Maine, it is held that actual notice of an unregistered deed is necessary, and that it is not sufficient to prove facts that would put the party upon inquiry.    He is not bound to inquire ; but it must be shown that he had actual notice or knowledge of such deed.    Pomroy *v.* Steevens, 11 Metcalf, 244 ; Spafford *v.* Weston, 29 Maine, 140.

Notice of an unregistered conveyance is not binding unless given by a person interested in the property, and in the course of the treaty for the purchase.    He will not be bound by notice in a previous transaction which he may have forgotten.    Gray *v.* Woods, 4 Blackford, 432.

Even constructive notice of an unrecorded deed must be so clearly proved as to make it fraudulent in the purchaser to take and register a conveyance in prejudice to the known title of the other party.    1 Story Eq., sec. 398.

*Crockett & Crittenden* for Respondent.

An instrument is only void for uncertainty, when it is perfectly clear upon its face that the intent of the maker is so uncertain that no evidence of extrinsic facts can make it certain.   2 Parsons on Contracts, p. 69, note *s*, and cases cited ; Kea *v.* Robinson, 5 Iv. Eq. R. 373 ;  Neel *v.* Hughes, 10 Gill & Johns. 7 ; Jackson *v.* Roosevelt, 13 Johns. R. 97 ; Jackson *v.* Delancey, 13 Johns. R. 537.

For the purpose of applying the instrument to the facts, and determining what passes by it, every material fact that will enable a Court to identify the land described, and to place a Court as near as may be in the situation of the parties to the instrument, is admissible in evidence, and parol evidence may be given for the purpose of proving them.   2 Parsons on Cont. p. 61 to 65, and n.—69 to 78, and n. and cases—61, 62, n. *u* and *v*—69, n. *s*—74, n. *v*—75 ; Broom's Legal Maxims, 390; 391, 2, 3, 5 ; 4 Phil. on Ev. 495, 525, 547, 548 ; Blake *v.* Doherty, 5 Wheat. R. 362 (682); 1 Greenl. on Ev. secs. 286, 287, 288, 301, and n. ; Worthington *v.* Hylyer, 4 Mass. R. 204 ; Throckmorton's Lessee *v.* Moon, 10 Ohio, 44 ; Lessee of Matthews *v.* Thompson, 3 Ohio, 272 ; Ferris *v.* Coover *et als.*, 8 Cal. Rep. 589.

The appellants' authorities also support this proposition, and without the application of this principle there was no land granted to Higuera.

Upon the extrinsic evidence, it appears that the quantity of land is erroneously stated.   The mention of quantity is mere description, not importing any covenant.   The other particulars of the description show clearly the intent to grant the tract in the Rincon below the line designated, and must control ; and the mention of quantity being less certain and material, must be disregarded.   It is a mere question of inaccurate description, to which the maxim *falsa demonstratio non nocet* applies. 2 Greenl. Cruise, tit. 32, ch. 21, sec. 31, n. and cases cited ; 2 Parsons on Cont., p. 62, n. and cases cited ; Powell *v.* Clark, 5 Mass. 355 ; Reddick *v.* Leggett, 3 Murphy N. C. R. 539 ; Bilk *v.* Love, 1 D. & B. N. C. R. 73 ; Harrison *v.* Talbot, 2 Dana, 258 ; Brown *v.* Parish, 3 Dana, 6 ; Doe *v.* Thompson, 5 Cow. R. 371 ; Jackson *v.* Moore, 6 Cow. R. 706 ; Hathaway *v.* Power, 6 Hill, 453.

A conveyance of land by known designation without specifying

boundaries, is good. The boundaries may be shown by parol.    United States v. Sutherland, 19 How. 363 ; Castro v. Gill, 5 Cal. R. 40 ; 1 Greenl. Ev. sec. 286.

No parol evidence was given by the plaintiff to vary or contradict the deed of Higuera to Fallon, or that of Fallon to Martin, but only to apply those deeds to their subject matter, to show the location of the Rincon de los Cameros, and the position of the objects and lines called for in the deeds, and place the Court, as near as may be, in the position of the parties, and thereby enable it to ascertain the intent of the grantor in regard to the land conveyed, as expressed by the deeds themselves.

The declarations and acts of Higuera at the time of his sale to Fallon were not only admissible in evidence for the purpose of showing where the Rincon de los Cameros is, but for the purpose of showing what was the particular tract of land intended to be sold and conveyed, the parties having gone upon the ground and Higuera having pointed out and designated on the ground, the boundaries of the tract ; and the subsequent declarations of Higuera to John Walker, Jos. R. Walker, and Martin, were admissible in evidence against himself, and all persons claiming under him, as admissions made by the owner of adjoining lands on a question of boundary.    3 Phil. on Ev., Cow. & H. notes, p. 265, 266, 272, and cases cited.

And his declarations to Martin would operate by way of estoppel, Martin having acted upon them in making the purchase from Fallon. 3 Phil. Ev., Cow. & H.'s notes, p. 367 et seq.

The survey made with Higuera's assent, and as directed by him, was not only evidence, but is conclusive against him and all persons claiming under him.    6 New Hampshire R. 107, and cases cited ; Boyd's Lessee v. Graves, 4 Wheat. 513 ; 7 Cow. R. 76.

Upon its face, and taking into consideration the testimony clearly admissible in evidence to apply the words of description, the deed of Higuera to Fallon is a conveyance of all the land known as the Rincon de los Cameros, lying in the forks of the Cameros creek and Napa river, below the line established by the two points, the crossing of the Cameros creek and the foot of the hill on the east ; and the designation of quantity must be rejected as erroneous description.    Looking

further to the acts and declarations of Higuera, there can remain no doubt whatever of the correctness of this position.

The deed of Higuera to Fallon was executed on the thirteenth November, 1847, and was recorded so as to impart notice to all subsequent purchasers from Higuera.    Act April 13, 1850, ch. 93; Ryburg v. Perkins, 6 Cal. R. 674.

It is objected by the defendants that the deed of Higuera to Fallon was not under seal, and did not convey legal title.

The objection is untenable in law.    The deed was made prior to the Act adopting the common law ; and under the law in force at the time it was made, (1847) no distinction existed between sealed and unsealed instruments, nor between legal and equitable titles.    Any writing which had a date, was signed by the grantor, named the grantee, and the price paid, and described the property, was sufficient to pass the title.    Hayes v. Bona, 7·Cal. R. 153.

Even a parol sale of land was good when there was a survey, or when possession was delivered of the land or of the title papers. Toler v. Folsom, 1 Cal. R. 207 ; Sanchez v. Gonzales, 11 Martin, 207 ; Gonzales v. Sanchez, 4 Martin N. S. 657 ; Le Blanc v. Viator, 6 Martin N. S. 257 ; Dacrest's Heirs v. Byean's Ext., 8 Martin N. S. 197 ; Sacket v. Hooper, 3 La. R. 107 ; La Fayette v. Blanc, 3 La. An. 61 ; Buyck v. the United States, 15 Pet. 224 ; United States v. Acosta, 1 How. 24 ; United States v. King & Cox, 3 How. 773 ; Boisdore v. the U. S., 11 How. 93, 101, 102 ; Strother v. Lucas, 12 Pet. 447, 449, 457.

As to the principles which should govern this Court in passing upon deed and grants made under the former laws of California, we refer the Court to Strother v. Lucas, 12 Pet. 447, 449, 457 ; Boisdore v. the U. S., 11 Howard, 93, 96, 101, 102 ; U. S. v. Buyck, 15 Pet. 224.

The defendants, Crocker, McKune & Robinson, were not purchasers in good faith, nor for a valuable consideration.    They had actual notice when they took the deed from Green, of the prior deeds of Higuera to Fallon, and of Fallon to Martin, and of the boundaries of the land conveyed by those deeds and claimed by Martin.

Notice to one of several partners, of a prior unrecorded deed, is

notice to all the partners, and will defeat a deed of the same land subsequently made to all the partners.    Collyer on Partnership, p. 399, sec. 443 and cases; Barney v. Currier, 1 D. Chip. Vt. 315.

As to the general law in regard to notice of prior unrecorded deeds, we refer to Story's Eq. sec. 395 to 403 ; 4 Kent's Com. p. 177, 181; Watson v. Robey, 9 Cal. R. 52; Woodworth v. Guzman, 1 Cal. R. 203.

Further : Crocker, McKune & Robinson were not purchasers for a valuable consideration.    The consideration stated in their deed is ten dollars, a nominal consideration, and there was no proof of the payment of any money whatever.    They do not fall within the class of subsequent purchasers who can insist on notice.    Story's Eq. sec. 1522 and cases cited.

And there is another most sufficient reason why none of the defendants claiming under the deed of Higuera and wife to Riva, can claim to occupy the position of subsequent purchasers entitled to notice.    An unrecorded deed is only void as against a subsequent purchaser in good faith and for a valuable consideration, where his own conveyance shall be first duly recorded.    Sec. 26 of Act concerning Conveyances, Wood's Dig. 103.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This is an action of ejectment to recover the possession of certain premises situated in the County of Napa.    The plaintiff and the defendants claim under Nicholas Higuera, to whom a grant of a tract of land, subsequently entitled " Entre Napa," was made in May, 1836, by the then Governor of Upper California.    It is admitted that Higuera was the owner in fee of the tract on the thirteenth of November, 1847. The premises in controversy are a part of this tract, and are described as lying between the Napa river and the creek emptying into it, known as the Arroyo de los Cameros, south of a line commencing at a point where the old road leading from Napa to Sonoma crosses the Arroyo, and running to the southern point of the hills on the east, and thence to Napa river.    The plaintiff traces his title through a deed from Higuera and wife to Matthew Fallon, executed November 13th, 1847 ; a deed from Fallon and wife to Julius Martin, executed July

1st, 1850, and a deed from the Sheriff of Napa county, executed March 21st, 1857, upon a sale made under an execution issued upon a judgment recovered against Martin. The judgment became a lien upon the premises, December 9th, 1854, and by the deed the estate and interest which Martin possessed on that day, passed to the plaintiff. The subsequent conveyances of Martin and Fallon to the plaintiff, dated respectively May 25th, 1856, and June 15th, 1857, may be dismissed from notice, as they do not add to his title.

The defendants claim through a deed from Higuera and wife to Ramon de la Riva, executed February 7th, 1852, and a deed from Riva to Encarnacion Cacho, and Marta Frias, daughters of Higuera, executed March 28th, 1852. The daughters partitioned the property between themselves, October 13th, 1852; after which, on the eighth of November, 1852, Encarnacion conveyed her interest to the defendant, Green, and on the twenty-eighth of June, 1854, Green conveyed a part of the land claimed by him under deed from Encarnacion, to the defendants, McKune, Crocker and Robinson. The other defendants are tenants of either Frias, or Green, or McKune, Crocker and Robinson. The will of Higuera may be passed over in the consideration of the case, as it cannot affect the claim of the defendants. It was made after the sale to Fallon; and, if this were otherwise, it could only take effect upon the death of the testator, and operate upon property which he then possessed.

The principal question presented for consideration relates to the description of the premises contained in the deed of November 13th, 1847, to Fallon, which the counsel of appellants insists is void for uncertainty. It reads as follows : "A certain quantity of land, lying, being and situate in the District of Sonoma, and territory of Upper California, in the valley of Napa, containing, more or less, one square mile of land, in the place known as the Rincon de los Cameros, commencing at the wagon road and ending at the point of the hill on the east."

It appears that the term Rincon de los Cameros was used to designate generally the land lying between Napa river on the one side, and the Arroyo on the other. The two streams meet at an angle, forming the two sides of a triangle ; and some distance above their junction, the old road leading from Napa to Sonoma crosses the Arroyo. It

Stanley *v.* Green.

further appears, that previous to the execution of the conveyance to Fallon, and pending a proposition of Higuera to sell the Rincon, the parties went over the ground in company, Fallon being at the time ignorant of its location; and there, after its extent and upper line had been pointed out, the purchase was concluded, with the clear understanding that it was to embrace the entire " pocket," as it is sometimes termed in the evidence, from the line down. It also appears that on the day following, the parties, including the wife of Higuera, applied to the Alcalde of Sonoma to draw the conveyance ; that Higuera desired it to be written in Spanish, and, as the Alcalde was ignorant of the language, he employed a person who understood it, for that purpose. The Alcalde then dictated the deed, from such information as was given to him by Higuera. When they came to the mention of quantity, neither party could state the exact amount. They called it a mile square, more or less, but with the understanding that it was to include the entire tract of the Rincon.

In addition to this, the record discloses repeated declarations of Higuera to different parties, as to his sale of the premises, and the position of the upper line ; in 1849, to John Walker, who was desirous of purchasing, and had a copy of the deed to Fallon, and for whom Higuera made a sketch or plot of the land ; in 1850, to Martin, who held at the time a power of attorney from Fallon, to sell, and who himself shortly afterwards became the purchaser, and with whom Higuera rode over the land, pointing out its boundaries ; and to Joseph Walker, who was employed to have a survey made of the premises for Martin, after his purchase, and to whom Higuera pointed out the land sold to Fallon, and the commencement of its upper line.

If we now look at the description of the premises in the deed to Fallon in the light of these circumstances, the uncertainty, which is the subject of objection, disappears. Rincon de los Cameros designates the land embraced between the streams forming, as we have seen, two sides of a triangle, and the line commencing on the road and drawn to the point of the hills on the east, sufficiently indicates the third side. The description is evidently intended to embrace land in the Rincon below the specified line, and is to be construed as if it read, " A certain quantity of land situated within the Rincon, commencing

at a line running from the wagon road to the point of the hills on the east, be the same one square mile, more or less."

That the evidence of the circumstances under which the deed was executed is admissible, does not admit of a question.  These circumstances place the Court in the position of the parties, and enable it to interpret intelligently the language used by them.  It is not to contradict or vary the terms of the instrument, that the evidence is received, but to apply them to the subject matter.  For this purpose, extrinsic evidence must be admissible in the interpretation of every instrument; and the law will not declare the instrument void for uncertainty, until it has been examined with all the light which cotemporaneous facts may furnish.  If these render the intention clear, and the words of the instrument are, by fair rendering, susceptible of a construction to uphold such intention, then they will be so construed, and the instrument enforced.  " If the meaning of the instrument, by itself," says Parsons, " is affected with uncertainty, the intention of the parties may be ascertained by extrinsic testimony ;" (of the circumstances under which the instrument was made) " and this intention will be taken as the meaning of the parties expressed in the instrument, if it be a meaning which may be distinctly derived from a fair and rational interpretation of the words actually used. But if it be incompatible with such interpretation, the instrument will then be void for uncertainty or incurable inaccuracy."  (On Contracts, 2 vol., 78)  " For the purpose of applying the instrument," says Baron Parke in Shore v. Wilson, (9 Cl. & Fin. 556) " to the facts, and determining what passes by it, and who takes an interest under it, a second description of evidence is admissible, viz., every material fact that will enable the Court to identify the person or thing mentioned in the instrument, and to place the Court, whose province it is to declare the meaning of the words of the instrument, as near as may be in the situation of the parties to it.  See also Hasbrook v. Paddock, 6 Barb. 635 ;  Hildebrand v. Fogle, 20 Ohio, 157 ; 1 Greenleaf Ev., sec. 286 ;  Cowen & Hill's Notes to Phillips, Part II, notes 263 and 269, and authorities there cited.

The declarations of Higuera to Fallon, made at the time of the sale, were admissible to show the location of the Rincon de los Came-

ros, and to identify the tract sold ; and his subsequent declarations to the Walkers and Martin, were admissible against himself as the owner of adjoining property on the question of boundary. It is to be observed that at the time these subsequent declarations were made, Higuera was the owner of the entire tract of Entre Napa, excepting that previously conveyed to Fallon, and these declarations show the position of the dividing line between the land retained by himself and that which had passed to Fallon. So far as the tract south of the line commencing at the road is concerned, they were against his title.

That such declarations of the grantor are admissible not only as against himself, but against parties claiming under him, is a familiar principle. The subsequent claimants are considered as standing in his place, and as having taken the title *cum onere,* subject to the same charges and restrictions which attached to it in his hands. It matters not whether the declarations relate to the limits of the party's own premises, or the extent of his neighbor's, or to the boundary line between them, or to the nature of the title he asserts. If their purport is to restrict his own premises or lessen his own title, they are admissible. Cowen & Hill's Notes to Phillips, Part II, note 194, and cases there cited ; 1 Greenl. Ev., sec. 189.

Aside from this, the declarations to Martin evidently controlled his conduct in making the purchase from Fallon, which followed at an interval of only a few days, and are effectual by way of estoppel against the assertion of any interest by Higuera and his vendees in the premises in controversy, in opposition to the title of Martin and those claiming under him. If we add the conduct of Higuera when the survey was made by Martin after his purchase, in pointing out the starting point, and indicating the line to be followed in the survey, all question as to the extent of the premises would seem to be conclusively set at rest. It would, we think, be difficult to find a case parallel to this in the clear and distinct and repeated recognitions, in a variety of forms, by the grantor, of the extent, location and boundaries of land conveyed by him, where the description was not more specific than the one contained in his deed.

The words " containing more or less, one square mile of land," are merely descriptive of the premises, and not words of limitation upon

the quantity conveyed. This is the construction placed upon the adjudged cases upon the statement of quantity accompanying a description of premises by metes and bounds, or by a designation of number or place. Thus in Jackson v. Defendorf, (1 Caines, 493) the deed purported to convey lot number two, in a certain patent on the south side of the Mohawk river, referring to a map for boundaries, containing two hundred acres. Upon a survey, the lot was found to contain more than the designated quantity, and the question presented was whether the whole passed. The Court said, "the intent was to convey the whole lot. It referred to the map. Where the quantity of acres is mentioned, it is only a description of the lot, according to the common acceptation." In Jackson v. Moore, (6 Cowen, 706) the conveyance purported to convey two tracts of land in the County of Ontario, "being township No. 3, in the 5th range; also, No. 4 in the 6th range; to be six miles square, and containing twenty-three thousand and forty acres each, and *no more;* " but as these tracts were in fact six by eight miles in size, the Court held that the whole passed. Sunderland, J., in delivering the opinion said: " It is perfectly settled, that when a piece of land is conveyed by metes and bounds, or any other certain description, all included within those bounds, or that description, will pass, whether it be more or less than the quantity stated in the deed. And when the quantity is mentioned in addition to a description of the boundaries or other certain designation of the land, without an express covenant that it contains that quantity, the whole is considered as mere description. The quantity being the least certain part of the description, must yield to the boundaries or number, if they do not agree. (Jackson v. Barringer, 15 John. 471 ; Powell v. Clark, 5 Mass. Rep. 355.) If a man lease another the meadows in D and S, containing ten acres, and they, in truth, contain twenty, all shall pass. 13 Vin. Abr. 79, plac. 24."

In Jackson v. McConnell, (19 Wend. 175) the deed described the premises by courses and distances, beginning at a specified point, and concluding with the words " *Containing two hundred acres, street measure, and no more.*" It appeared that the description contained about nine acres more than the quantity thus specified, and the Court held that the grantee was entitled to the whole.

In Hathaway *v.* Power, (6 Hill, 453) the defendant gave in evidence a deed containing the following description, viz. : "All that certain tract or parcel of land situate in township No. 11, in the third range of townships, County of Ontario, and State of New York, it being one hundred and sixty acres of land in lot No. 14, with all the hereditaments and appurtenances thereunto belonging." It was proved on the trial that the lot contained one hundred and eighty-five acres, and the Court held the whole passed- In delivering the opinion, Beardsley, J., said : " The embarrassment in the case has arisen from laying too great stress on the words ' *Containing one hundred and sixty acres of land.*' It is assumed that this clause must be strictly true ; and then as lot No. 16 contains one hundred and eighty-five acres, it is argued that a part of it only was intended to pass. But these words are descriptive of quantity, and nothing more, and no deed was ever held void for a mistake in this respect.

" Undoubtedly, effect should be given, if practicable, to every part of the description. Still, if some part is inapplicable or untrue, and enough remains to show what was intended, the deed must be upheld. The false or mistaken part should be rejected, and when that happens to be a mere statement of the quantity, it will be done without the least hesitation. I understand this deed to be in effect the same as if the description had been *all the land in lot number fourteen, being one hundred and sixty acres.* Such a description, although mistaken as to the quantity, would, beyond all doubt, have carried the entire lot." See, also, Jackson *v.* Berringer, 25 Johns. 471 ; Howe *et al. v.* Bass, 2 Mass. 380 ; Powell *v.* Clark, 5 Mass. 355 ; Smith *v.* Hodge, 2 N. H. 303 ; Large *v.* Penn, 6 Seargt. & Raw. 488 ; Belden *v.* Seymour, 8 Conn. 19 ; Benedict *v.* Gayland, 11 Conn. 332 ; Brown *v.* Parish, 2 Dana, 6.

The counsel of the appellants do not question the correctness of the general doctrine as to the immateriality of the affirmation of quantity in conveyances, when there is other description by metes and bounds, but insist that, in the present case, the doctrine does not apply, as there are no specific boundaries given. In this his position is untenable. A designation of the tract by a particular name or number is sufficient ; and if it can be rendered certain by extrinsic evidence, this

is as good a description as one by metes and bounds. It is undoubtedly essential to the validity of a conveyance, that the thing conveyed must be described so as to be capable of identification, but it is not essential that the conveyance should itself contain such a description as to enable the identification to be made without the aid of extrinsic evidence. Castro v. Gill, 5 Cal. 42; Blake v. Doherty, 5 Wheat. 359.

The argument of counsel is based upon an erroneous construction of the language of the deed to Fallon. It does not purport to convey one square mile of land lying in the place known as " Rincon de los Cameros," as part thereof, but to convey the entire tract lying therein, be the same one square mile more or less. This is the construction which the plainest rules require, which does no violence to the language of the instrument, and which effectuates the intention of the parties. There is no doubt that Higuera intended to give to Fallon an effective conveyance. He received a valuable consideration for the deed. He always admitted that he intended to transfer the land within the forks of Napa river and the Arroyo—in the " Pocket," as some of the witnesses term it—and not a mere right to select " one square mile more or less " from the tract.

It would be a waste of time to comment upon the various cases cited by counsel of the appellants, in which conveyances have been held void for uncertainty of their description of the premises. They are all easily distinguishable from the case at bar, and apply to an entirely different state of facts.

The objection to the want of a seal to the conveyance to Fallon is not tenable. No seal was requisite under the civil law. Any instrument which contained the names of the parties, a designation or description of the property sold, the date of the transfer, and the price paid, was sufficient to pass the title. Pastin v. Rassette, 5 Cal. 467; Hayes v. Bond et al., 7 Cal. 153.

The defendants claim title from Higuera, through his deed to Riva. This deed was executed February 7, 1852, and, in terms, excepts from its operation all land previously sold and conveyed. The claim of defendants is thus defective in its very origin. The land in controversy had been sold and conveyed nearly five years previously. The deed to Riva only purports to transfer his remaining interest, and its

legal effect is precisely the same as if, in the description of the premises, it had given boundaries necessarily excluding the land previously sold. Adams v. Cuddy, 13 Pick. 460. This single fact concludes the defense.

The deeds from Riva to the daughters of Higuera contain a similar exception. The defendants had notice of that exception, for these deeds were on record; and even if the defendants had never seen or heard of the conveyance to Fallon, they could only have taken the remaining interest of Higuera. Whenever that conveyance appeared, it would enable the defendants to ascertain and fix the limits of the remaining interest, which, alone, they ever took.

But even had the deed to Riva, and by him to the daughters, contained no exception in terms, neither they, or the other parties claiming through them, could have held the premises against the plaintiff. Riva was not a purchaser. He paid nothing for the conveyance. This he states himself. He says that he took the conveyance under a parol trust, for the benefit of the daughters. The conveyances to them were executed in the performance of this trust, and upon no other consideration. The partition deeds between the daughters placed their title in no better position. The legal operation of the several conveyances was to effect a gift to the daughters from Higuera of the separate parcels held by them. This disposes of the case so far as Marta Frias is concerned.

The defendant Green is in no better position, for he purchased of Encarnacion, with actual notice of Martin's claim. Of this there was sufficient evidence to go to the jury, and the fact is involved in their finding.

The defendants, McKune, Robinson and Crocker, are not entitled to protection as purchasers for value without notice. The deed to them recites only a nominal consideration of ten dollars, and no proof of any other consideration was given or offered. McKune was Law Agent of the United States at the time the claim of Martin for the land in controversy was pending before the Land Commission, and, as such officer, he was present at the taking of the deposition of Walker in relation to the same, and cross-examined the witness on the subject. It would, indeed, be unjust to charge McKune with notice of all pro-

ceedings, which his duties as an officer required him to take general charge of; but it is otherwise in relation to matters to which his attention was particularly called, and in which he directly and personally participated. The deed was drawn by him; and though his law partners, Crocker and Robinson, do not appear to have known of its execution until long afterwards, they must hold their interest subject to the same rights of third parties. In taking the conveyance in the name of his associates, he must be considered as having acted as their agent, and notice to him was equally notice to them. Story's Equity, secs. 408, 409. It would, indeed, be singular, if the legal effect of notice could be obviated by so easy a subterfuge as the insertion of the names of other parties in the conveyance.

We do not perceive any error either in the refusal of the instructions requested, or in those given which operated to the prejudice of the defendants. Taken together they were as favorable to the defense as the facts justified.

Judgment affirmed.