Johnson, C. J. This was abillfiledby Witter in Hempstead Circuit Court in which he charged that in March, 1841, Arnett as sheriff of said county, appointed him his deputy, and contracted to give him for his services as such deputy, one-half of the fees that might accrue to himself for all and every kind of service and employment appertaining to his office; that he accepted the appointment, and thereupon became and was duly and legally constituted the deputy of the said Arnett; that he immediately entered upon the discharge of his duties as such deputy, and that during the continuance of his deputyship, which lasted from March, 1841, until some time in the fall of 1845, he performed nearly all the duties of the office, and that Arnett then, without dny just cause, and without having given him any notice of his intention, discontinued him as his deputy. He further charged that during the time he acted as the deputy of Arnett, he performed a great deal of business, and earned a large amount of fees; that the fees of the office during the time he acted as deputy amounted to about eight thousand dollars, but that he could not state the precise amount; that during that period but a small amount of fees was collected by himself, and that he collected but little, if any, more than was necessary to defray his ordinary expenses; that by Arnett’s conduct in discontinuing him as his deputy, he was prevented from collecting any of the fees that had become due, or receiving any compensation for his services. He also charges that he is informed, and believes it to be true, that Arnett and his deputies, since his dismission, have, collected a considerable portion of the fees that accrued during his deputyship, but to what amount he is wholly unadvised, as Arnett has always failed and refused to render any account, or to make any settlement whatever of their partnership transactions. He further charges that of the fees earned, and due to the office, during the period of his continuance therein, a large sum yet remains uncollected, but to what amount he is unable to state; that the accounts are numerous and complicated and that he is unable to state them in detail. He also charges that he is informed, and believes it to be true, that Amett is in failing circumstances, or is already totally insolvent; that he does not own or hold any visible property which would be adequate to reimburse him the amount due him on account of his services as such deputy, and that should he be permitted to collect the residue of the fees to which they are jointly entitled, that he would be wholly without security for the sum due him. He also states that during the continuance of the partnership he advanced from time to time divers sums of money out of his own private funds to enable them in the early part of their partnership to pay their necessary expenses in transacting the business in which they were mutually engaged, and that the several advances made by him amounted to about two hundred dollars, and that he from time to time collected fees due the office and to be accounted for by him of about the sum of six hundred dollars, and that he is ready and willing, and has always been ready and willing, to account for the same. Upon this state of facts he prays that Arnett may be compelled to answer upon oath, that an account may be taken of the fees earned and due during his continuance as deputy, and that Amett may also be compelled upon oath to render a just and true account of the moneys collected by him during such deputyship; and that, in the meantime, one or more fit and responsible persons be appointed to collect and receive the fees earned and due during that period, which have not been collected by Arnett or his deputies, and that upon a full adjustment of accounts to decree the payment of such sum as may be found due to him; with a prayer for general relief. To this bill the appel-lee interposed his demurrer, which was sustained by the court, and the bill dismissed. The record presents but one solitary question, and that is whether the bill discloses such facts and circumstances as to bring it within the province of a court of equity. It is no objection to the jurisdiction of courts of equity that a party has a remedy at law-, unless it be shown that the legal remedy is plain, direct and complete. If we apply this test to the case now under consideration, it is perfectly apparent that it is a proper subject for the exercise of chancery jurisdiction. It is impossible in the nature of things that the complainant could procure the proof necessary to sustain the charges in his bill without a resort to the conscience of the defendant, and upon a full developement of the facts of the case, nothing short of an application of the enlarged principles of equity cortld enable the court to mete out full and substantial justice to both parties. The scope and object of the bill is not simply to ascertain what amount of fees have been collected, but it is equally important to be advised as to such as have net been realized, and whether any exertions have been made for that purpose, tinder the contract, both parties are equally and mutually interested in the loss and profits of the office, and the defendant, having deprived the complainant of the power to collect his share, is of necessity and according to every principle of conscience and justice, bound to collect and, account for the same. We consider it clear that a court confined and restricted by the strict rules of the common law would be utterly incompetent to afford a plain, direct and adequate remedy. It is manifest therefore that the Circuit Court erred in sustaining the demurrer. Judgment reversed.