[No. 554.  August 28, 1895.]

## PATRICK P. FORD, APPELLEE, v. SPRINGER LAND ASSOCIATION ET AL., APPELLANTS.

MECHANICS' LIENS—CONSTRUCTION OF STATUTES.—The mechanics' lien law, being remedial in its nature and equitable in its enforcement, should be liberally construed. This court held otherwise in Finane v. Hotel Co., etc., 3 N. M. 417; but the weight of authority is against that decision on this point, and it is overruled to that extent.

ID.—NOTICE OF LIEN, SUFFICIENCY OF.—Where the notice of lien and the bill of complaint follow the language of the statute, and are sustained by the proof, it is sufficient. Minor v. Marshall, 6 N. M. 195.

ID.—LIABILITY OF OWNER FOR LIEN ON LANDS APPURTENANT.—In an action by a contractor to foreclose a mechanics' lien upon a certain ditch and reservoir system, and certain lands appurtenant thereto, where it appeared his employer, by a contract with the owner, was to receive a portion of the proceeds of sale of such lands when sold at an increased value, after the construction of the ditch, and that the owner had full notice of the contract with plaintiff and that it was being executed by plaintiff as the original contractor, and it was not contended that the owner gave any notice that it would not be responsible for the work, as required by section 1529, Compiled Laws, 1884,—Held: That complainant was entitled to a lien on such land which was enhanced in value by the construction of the ditch.

ID.—OBJECTION TO NOTICE OF LIEN, TOO LATE, WHEN.—An objection to notice of lien for insufficiency in the statement of claim comes too late when made for the first time on appeal.

ID.—QUANTITY OF LAND—GOVERNMENT SURVEY—ADMISSIONS OF ANSWER
—ESTOPPEL—PRESUMPTION.—In such action, where defendants
admitted in their answer that the land in suit was appurtenant to the
ditch and contained twenty-two thousand acres, and described the
sections according to the government surveys, they were estopped to
set up that the sections contained more than that number of acres.
In the absence of any proof to sustain such contention, the court
might presume that the discrepancy, if any, was accounted for by the
deficiency in legal quantity by the statute and rules of government
surveying. Moreover, in the description of land, the quantity must
yield to the boundaries or number, where they do not agree.

ID.—CONTRACT—TENDER—CREDIT—EVIDENCE.—In such case, where
complainant agreed to select a certain section of the land in suit and
pay a certain sum for it, which was to go as a credit and payment on
his contract on the final estimate, and his employers agreed to secure
from the owner a deed to the same free of all incumbrances and
deliver it to complainant, and there was some proof of the making of
the deed by the owner, but not sufficient evidence to establish such
tender, as was required by the terms of the contract, complainant
was not bound to accept it and allow such credit.

ID.—FILING OF LIEN BY PRINCIPAL CONTRACTOR BEFORE SATISFACTION OF
LIENS OF SUBCONTRACTORS.—Where it was contended that before the
principal contractor could recover he should have satisfied the liens
filed by the subcontractors, and it appeared he had not done so
because appellant had not paid him according to contract,—Held:
That the principal contractor was not bound to pay the subcontractors
until he received his money for the work.

ID.—FORECLOSURE—DEFICIENCY JUDGMENT—PLEADING.—In a proceeding
for the foreclosure of a mechanics' lien, where the bill of complaint
prayed for a deficiency judgment in case the property, when sold,
should not produce sufficient to fully satisfy the amount found to be
due complainant,—Held: That the prayer of the bill was proper,
and the court did not err in entering a deficiency judgment and order
for writ of execution to issue in that event. Dodge v. Trust Co.,
106 U. S. 445.

ID.—FINDING OF FACTS BY CHANCELLOR—WEIGHT OF EVIDENCE.—Where
the finding of facts by the chancellor is clearly sustained by the
weight of the evidence, it will not be disturbed on appeal.

APPEAL, from a decree for complainant, from the
Fourth Judicial District Court, Colfax County.
Affirmed.

The facts are stated in the opinion of the court.

FRANK SPRINGER, LONG & FORT, and A. A. JONES for appellants.

If the intending lienor falls short of complete and strict substantial compliance with the statutory prerequisites, he does not get his lien, but is left to his ordinary remedy against the debtor. Finane v. Hotel Co., 3 N. M. 411; Minor v. Marshall, 6 Id. 194; Phil. Mech. Liens, sec. 1. See, also, Jones on Liens, secs. 112, 1544, 1545; Canal Co. v. Gordon, 73 U. S. 571; Bottomy v. Church, 2 Cal. 90; Wagar v. Briscoe, 38 Mich. 587; 15 Am. and Eng. Ency. 5.

When the work is not done for the owner of the property, the relation which the person for whom it is done occupies to such owner must be so stated as to bring him within the list of those who, under the lien law, are authorized to bind such owner, or the lien is void. Warren v. Quade, 29 Pac. Rep. 827; Lumber & Mfg. Co. v. Wilson, Id. 829.

The omission to state the name is fatal to the lien. McDonald v. Backus, 45 Cal. 262; Wood v. Wrede, 46 Id. 637; Phelps v. M. G. M. Co., 49 Id. 336. The claim, to be of any effect, must show a prima facie lien by force of its own recitals. Jones on Liens, secs. 90, 92, 913, 1455; Noll v. Swineford, 6 Pa. St. 187, 199; Bottomy v. Church, 2 Cal. 90; Goss v. Strelitz, 54 Id. 644; 1 Greenlf. Ev., sec. 56.

The failure to deduct such just credit and offset, as the statute requires, is sufficient to vitiate the lien. Jones on Liens, secs. 1408, 1414.

If, by the terms of the contract, as in this case, the claim is not legally demandable, no lien can be founded upon it. Jones on Liens, sec. 1588; Harmans v. Ashmead, 60 Cal. 441.

WOLCOTT & VAILE for appellee.

As to sufficiency of description of land, see Phil. on Mech. Liens [2 Ed.], sec. 379; McClintock v. Rush,

63 Pa. St. 203; Kennedy v. House, 41 Id. 39; Lumber Co. v. Russell, 22 Neb. 126; De Witt v. Smith, 63 Mo. 263.

Statutes governing mechanics' liens are remedial, and must be liberally construed. Rogers v. Hotel Co., 4 Neb. 59; Lumber Co. v. Russell, 22 Id. supra; De Witt v. Smith, supra.

The assertion of quantity in a deed must yield to a description by metes and bounds, or by name and number. Stanley v. Green, 12 Cal. 148; De Arguello v. Greer, 26 Id. 632; Wadhams v. Swan, 109 Ill. 46; Ufford v. Wilkins, 33 Iowa, 110. See, also, Ware v. Johnson, 66 Mo. 662; Belden v. Seymour, 8 Conn. 18; Hatch v. Garza, 22 Texas, 177; Wright v. Wright, 34 Ala. 194; Powell v. Clark, 5 Mass. 355; Large v. Penn, 6 S. & R. 486; Doe v. Porter, 3 Ark. 57; Chandler v. McCord, 38 Me. 564; Jackson v. Livingston, 15 Johns. 470; Dale v. Smith, 1 Del. Ch. 1; Jennings v. Monk, 4 Metc. (Ky.) 106.

It is unnecessary to name the owner of the improvement, where the name of the reputed owner is stated. Sec. 1524, Comp. Laws, 1884; Minor v. Marshall, 6 N. M. 194; Harrington v. Miller, 4 Wash. 808; Allen v. Roe, 23 Pac. Rep. 901; Lumber Co. v. Gottschalk, 81 Cal. 646.

Lands appurtenant to and benefited by the ditch are here chargeable with the lien. Davis v. Auxiliary Co., 9 S. C. (Rich.) 204; Roby v. University, 36 Vt. 564; Executors v. Vandyne, 1 Hal. N. J. Eq. 490; Nelson v. Campbell, 28 Pa. St. 159.

LAUGHLIN, J.—This is an action in chancery, brought by Patrick P. Ford, appellee, against the Springer Land Association, and certain individuals corporate thereof, together with the Maxwell Land Grant Company and its trustees, to establish, fix, and foreclose a mechanics' lien upon a certain ditch and

reservoir system, rights of way therefor, and certain lands alleged to be appurtenant thereto, and it is founded on the following facts:

On October 20, 1888, a contract was entered into between Patrick P. Ford, of the first part, and the Springer Land Association, of the second part, for doing the earth work in constructing a certain ditch line and reservoir system, for irrigation, all in the county of Colfax and territory of New Mexico, the provisions of which, so far as pertinent to this case, are as follows: The party of the first part to furnish all necessary tools and labor, and perform all work of excavating and grading required in the construction of the Cimarron ditch and its accessories. Said work to be done in a thorough and workmanlike manner, and in full accord with the specifications thereto attached, and made part of the contract. * * * The party of the second part agreed to pay said party of the first part for the work so done at the rate of eleven cents per cubic yard for all earth removed, without classification; amounts due for said work to be paid at the time and in the manner described in the specifications thereto attached. "Specification 13. Subcontracts must be submitted to the engineer, and receive his approval, before work is begun under them. No second subcontracts will be allowed. Subcontractors will be bound by the same specifications as the original contractor, and will be equally under the authority of the engineer." "Specification 15. On or about the first day of each current month the engineer will measure and compute the quantity of material moved by the contractor during the preceding month. He will certify the amount to the company, together with an account of the same at the price stipulated, which amount will be audited by the company without unnecessary delay, and the amount thereof, less ten per centum, retained, will be paid to the contractor, in

cash, within ten days thereafter. This retained percentage will be held by the company as a guaranty for the faithful completion of the work, and will be paid in full with the final estimate, upon the certificate of the engineer accepting and approving the work; it being expressly understood that the failure of the contractor to fulfill his obligations will mean a forfeiture of this retained percentage to the company. The amount due to the contractor under the final estimate will only be paid upon the satisfactory showing that the work is free from all danger from liens or claims of any kind through failure on his part to liquidate his just indebtedness, as connected with this work.''

The land upon which the ditches and reservoirs were to be and were actually located and constructed, and upon which the improvements were actually made, did not belong to the said the Springer Land Association, or to any of the parties to the contract, or to their successors in interest, so far as appears from the record, but was at the time the property of the Maxwell Land Grant Company, which was not a direct party to the contract. The Maxwell Land Grant Company did, however, make a contract on the first day of May, 1888, with C. C. Strawn and his associates, who afterwards organized the Springer Land Association, by which the Maxwell Company gave it and its associates a right of way for the proposed irrigation system of ditches and reservoirs, and by which said agreement it was provided, among other things, that, with the view of selling certain of its lands at an enhanced value, and in consideration of certain perpetual water rights and franchises to be granted it by the other party, it agreed to set apart and reserve from sale about twenty thousand acres of its lands, and to give the other party, the Springer Land Association, which succeeded to the rights of said Strawn and his

associates under said contract, a certain portion of the proceeds which might be derived from the sale of the said lands, when sold. These lands were under the proposed ditch system, and to be irrigated by it. And by this agreement said Strawn and his associates agreed to expend about $60,000, or a sufficient sum to complete the enterprise on the proposed plan. The title to the lands at that time and at all times afterwards, so far as appears from the record, was in, and remained in, the Maxwell Company, except as to the rights acquired by Strawn and his associates and successors in interest under said contract. The same contract constituted and made Strawn and his associates and successors in interest the agent of the Maxwell Company to the extent of and for the purposes of carrying into effect the spirit and intent of the contract as to the sale of the said lands; but that party, the Springer Land Association, contracting with the appellee, Ford, had no other title in the lands than as given in that contract. Five days subsequent to the time the ditch contract was made, Ford entered into another contract with the Springer Land Association by which he agreed to select and take one section of the land under the ditch system, at the stipulated price of $8,000, to be considered as part payment on the contract price for constructing the ditch system, and the Springer Association agreed to procure a deed to Ford from the Maxwell Company, free from all incumbrances. The work of construction proceeded under the Ford contract, and he let subcontracts to McGarvey, Dargle, and Haynes. Estimates as provided by the contract, were made by E. H. Kellogg, the supervising engineer, from time to time, which were audited and paid by the Springer Association, up to about May, 1889, and the final estimates were made, including all balance alleged to be due on the contract, and for extra work, and presented about the middle of June of that year, and at the time the

contract work was alleged to have been completed, amounting to $17,634.27 due on the contract and $390 for extra work, and which the Springer Association refused to pay, on the grounds that the sum claimed was in excess of the amount due, and that the work had not been completed according to the contract; that the engineer's final estimate was erroneous in part, either through fraud, inadvertence, or mistake; and because the subcontractors had not been paid the several sums due them on the work by Ford, and that the property was not free from danger from liens. Thereupon Ford, on July 3, 1889, filed his notice of claim of lien for $17,634.27, alleged to be due on the contract, including all moneys due subcontractors at that time, and for $390, alleged to be due him for extra work. Thereafter the subcontractors filed their notice of claims of liens on the property for moneys alleged to be due them,— McGarvey for $5,000, Dargle for $2,274.30, and Haynes for an amount not shown by the record,—all of which said notices were filed within the time prescribed by law. Soon thereafter suits were brought to establish and foreclose the several liens by the subcontractors, some of which were pending when this suit was brought, and all against the ditches, laterals, reservoirs, and right of way, about sixty feet wide, the full length of the ditch, about twenty-six miles in length, and against twenty-two thousand acres of land, alleged to be under the ditch system, and to be irrigated thereby, and appurtenant thereto.

Ford filed his bill to foreclose the lien so claimed on June 30, 1890, in which he set out his contract of October 20, 1888; averred substantial compliance therewith, completion and acceptance of the same, but not by whom accepted; the filing of his claim of lien; the total amount due him at completion thereof; described the property as in the claim of lien; averred as to the contracts between the Maxwell Company,

Strawn and his associates, and the Springer Associa-
tion and its associates; that, during all the time the
Ford contract was being executed, the Maxwell Com-
pany and the Springer Association both had full
knowledge of the same, and that neither gave any
notice that they would not be responsible for it; that
at the time of the completion of the work there was
due Ford from the Springer Association and the indi-
viduals composing it $17,634.27 on the contract, and
$390 for extra work ordered by the supervising engi-
neer in charge,—with prayer for an accounting and
foreclosure of lien, decree for payment of costs, solicit-
ors' fees, sale of ditches, laterals, and reservoirs, and
the twenty-two thousand acres of land described, and
for a deficiency judgment, in case the property, when
sold, should not produce sufficient funds to fully satisfy
the several amounts so found to be due against the
Springer Land Association and its associates.  The
Springer Land Association and the individuals com-
posing it answered the bill, and denied that the work
was ever completed by complainant or accepted by
defendants; denied that they were indebted to the
complainant for said work in any sum, or that any
claim of lien was filed which would be effective to
establish a lien on the ditch system, or lands described
therein; averred that the Maxwell Company owned the
lands, and had given the Springer Association the
right to construct the ditches and reservoirs thereupon,
but denied that the twenty-two thousand acres of land
was to belong to the Springer Association; averred
that the final estimates made by the engineer were
given for work never done or completed, through
fraud, negligence, mistake, or inattention, or through
the fraudulent procurement of the complainant; that
under the contract the right to audit and determine
the amount to be paid on the engineer's estimates
rested with the Springer Association, and that it was

not bound to pay on estimates as made exclusively by
the engineer; that under said contract defendants were
not bound to pay final estimates made by the engineer,
except upon satisfactory showing that the work was
free from all danger from liens or incumbrances of any
kind; that subcontractors had filed liens for about
$10,000 against the property, upon some of which suits
had been brought, and were still pending; that com-
plainant had failed to remove or to take steps to
remove or to defend against said liens,—by reason of all
of which defendants were not bound to pay the final or
any other estimates for said work.  These defendants
filed a cross bill, setting up matters averred in the
answer, and other breaches by complainant, Ford, and
the loss, damages, and expenses to the defendants by
reason thereof, with a prayer that, in case an account-
ing should be decreed under the bill, these matters
should be considered and allowed as set-offs to Ford's
claims, and for general relief.  But neither the Maxwell
Land Grant Company nor any of its trustees filed any
answer or other pleadings of any kind.  Complainant
filed general replication to the answer and answer to
cross complaint, and issue was joined on the general
replication of defendants to cross answer.  The cause
was then referred to W. E. Gortner, Esq., as special
examiner, to take proofs and report the same to the
court.  A vast amount of testimony was then taken,
orally and by depositions, and a great number of
exhibits were offered, the bulk of which was directed
to the question of completion or noncompletion of the
work in compliance with the terms of the contract and
specifications, and the erroneous character of the final
estimates by the engineer, through mistake, inadvert-
ence, or fraud.  The record here consists of over twelve
hundred closely printed pages.  The taking of proofs
was closed and the case set down for argument, and
was argued before the court in vacation, and on March

28, 1893, Chief Justice O'BRIEN rendered his decision in favor of the complainant, and made his findings of facts and conclusions of law. And a final decree was thereupon enrolled, establishing a lien on the entire ditch and reservoir system and rights of way, and on the twenty-two thousand acres of land, for $22,097.75, including interest, being the amount claimed in the notice of lien, and which included all sums due him, and due on all subcontracts; and out of this amount to pay into court a sum sufficient to satisfy subcontractor Dargle on his subcontract lien, in event that Ford did not pay the amount due to him, and file Dargle's receipt in full for same, it then appearing that Ford had settled with all other subcontractors in full; and with interest to run at six per cent from date of decree for the debt, and $1,000 for complainant's solicitors' fees, and for all costs; and for a deficiency judgment, in case the proceeds derived from the sale should not be sufficient to pay the several sums so found for complainant, against the Springer Land Association and its associates therein named; and for an order of sale and foreclosure. To all of which defendants excepted, and the case accordingly is here on appeal.

Defendants assigned errors sufficient to raise all the material issues in the cause as to its merits.

The cause was ably argued in this court, at the July, 1894, term, by Frank Springer, Long & Fort, and A. A. Jones, for appellants, and by Wolcott & Vaile, for appellee, and exhaustive briefs were submitted on both sides.

This is an action in chancery, the purpose of which is to establish and foreclose a lien in favor of the appellee on the property of the appellants, as described in the notice of lien and in the bill of complaint. And upon the notice of lien the appellee must succeed or fail; and he must show that it is in substantial compliance with all the material requirements of the law and the facts applicable to the subject.

The law providing protection to mechanics, mate-
rial men, and laborers, by giving them a security on
property upon which they have furnished material,
labor, and skill for the enhancement of
its value requires nothing unjust to the
owner, and nothing unreasonable on the
part of those who seek its protection in enforcing their
remedy under it.    Those who attempt to fix a lien and
establish an incumbrance on property for the security
of their just debts and demands, and thereby compel
the owner to pay these obligations, which in many
instances they never directly contract, must show
affirmatively a substantial compliance with all the
essential requirements of the statute under which they
claim protection.    The mechanic's lien law was un-
known to and is in contravention of the common law
and equity jurisprudence.    It had its origin with the
civil law (Canal Co. v. Gordon, 6 Wall. 561; Minor v.
Marshall, 6 N. M. 195; 13 Pa. 167), yet, being rem-
edial in its nature, and equitable in its enforcement, is
to be construed liberally.    The equitable object of the
act is clearly expressed in the first section, in defining
it:.    "Sec. 1519.    A lien is a charge imposed upon
specific property, by which it is made security for the
performance of an act."    This court held in Finane v.
Hotel Co., 3 N. M. 256, that the law should be con-
strued strictly; but the weight of authorities is against
it, and that decision, to that extent, is here overruled.
Baldwin v. Merrick, 1 Mo. App. 281; Tuttle v. Mout-
ford, 7 Cal. 358; Barnes v. Thompson, 2 Swan (Tenn.),
313.    "Notwithstanding the mechanic's lien law was
unknown to the common law, yet, in view of the equi-
table character of the statute, it should be liberally con-
strued, but can not by construction be extended to
cases not provided for by statute."    Barnard v. Mc-
Kenzie, 4 Colo. 251; 15 Am. and Eng. Ency. Law,
179, and cases there cited.    But the notice of claim of

*Margin note:* Mechanics' liens: construction of statutes.

lien, being the foundation of the action, must contain all the essential requirements of the statute, and the failure or omission on the part of the person claiming the lien of any of the substantial requisites of the statute is fatal, and will defeat the action.

The tenth assignment of error is that the court below erred in establishing any lien whatsoever on the real estate, ditches, and reservoir system described in the decree and entered in said cause. This raised the question of validity of the notice of claim of lien. The authority for filing a claim of lien is found in section 1520, Compiled Laws 1884, and a ditch is NOTICE of lien: sufficiency of. therein enumerated as one of the various kinds of property subject to a lien; and it provides that every person who performs labor upon or furnishes materials to be used in or upon the construction, alteration, or repair of the several kinds of property therein enumerated "has a lien upon the same for the·work or labor done, or materials furnished by each, respectively, whether done or furnished at the instance of the owner of the building, or other improvement, or his agent." And section 1522 provides that: "The land upon which any building, improvement or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, is also subject to the lien, if at the commencement of the work, or of the furnishing of the materials for the same, the land belonged to the person who caused said building, improvement, or structure to be constructed, altered or repaired, but if such person owned less than a fee simple estate in such land, then only his interest therein is subject to such lien." This section goes to the quantity of the property to be charged, and to the interest to be conveyed to and vested in, the purchaser at the foreclosure sale. Section 1524 says: "Every

original contractor, within ninety days after the completion of his contract, and every person save the original contractor, claiming the benefit of this act, must within sixty days after the completion of any building, improvement or structure, or after the completion of the alterations or repairs thereof, or the performance of any labor in a mining claim, filed for record with the county recorder of the county in which such property or some part thereof, is situated, a claim containing a statement of his demands, after deducting all just credits and offsets, with the name of the owner or reputed owner, if known, and also the name of the person by whom he was employed, or to whom he furnished the materials, with a statement of the term, time given and conditions of his contract, and also a description of the property to be charged with the lien, sufficient for identification, which claim must be verified by the oath of himself, or some other person." This section is given in full because the lien is based upon its requirements, and must be tested by it, and on it the lien, and the action as to the validity of the notice of claim of lien, must stand or fall. It will be seen by this section that the notice of the claim of lien must contain five essential allegations or averments, and each must be stated substantially in the language of the statute. But no particular form of statement is required. All that is necessary is that the language used in the statement must convey and express in an intelligent manner the meaning and intent of the statute. To hold otherwise would be in effect, in many instances, to defeat a just and equitable claim on mere technicalities. This the legislature did not intend. The best manner in which to determine the validity of the notice of claim of lien in this case is to state each requirement of the statute and the averments in the notice of claim of lien applicable thereto; and this course will be hereinafter pursued.

The record discloses that the notice of claim of lien was seasonably filed and recorded, and that it was properly verified by the oath of the appellee, and that the action on the same was commenced within one year thereafter, and within the time prescribed by the statute. But appellants contend that none of the other requirements in this section were complied with, and that, therefore, there never was, nor is there now, any lien at all on the property as described and herein sought to be charged. This controversy can only be determined by a careful comparison of the essential requirements set out in this section with the allegations in appellee's notice of claim of lien. This section requires: First. "A claim containing a statement of his demands, after deducting all just credits and offsets." After describing the property, the notice of lien says: "To secure the payment of the sum of seventeen thousand, six hundred and thirty-four dollars and twenty-seven cents, the balance due and owing to said Patrick P. Ford by the aforesaid owner or reputed owner, after deducting all just credits and offsets, for excavating and embankments done and performed by him under a certain contract entered into by the said the Springer Land Association, a copy of which contract is hereto annexed, and made a part of this claim of lien; as, also, for the further sum of three hundred and ninety dollars, for extra excavating and hauling ordered by the engineer in charge of said ditch, and allowed him in pursuance of the provisions of the said contract,—all of which having been begun on, to wit, the first day of November, 1888, and prosecuted continuously until the twenty-first day of June last past." Second. "With the name of the owner or reputed owner if known." The notice of lien says after naming the Springer Land Association, certain individuals connected therewith, the Maxwell Land Grant Company, and certain individuals as its trustees, "owners or reputed owners;" and further on it says the sum

due and owing to said Ford "by the owners or reputed owners" of the land before described, and in closing it says: "The names of the reputed owners of the land hereinbefore mentioned are the Maxwell Land Grant Company, and certain persons therein named as trustees of said company, acting under the name, style and title of the 'Board of Trustees of the Maxwell Land Grant Company.'" It is here seen that names of the owners or reputed owners of the lands are mentioned three times; and the proof shows and it is admitted by both parties that the twenty-two thousand acres of land sought to be subjected to the lien belong to the Maxwell Land Grant Company; and it is equally clear from the allegations, proofs, and admissions in the answer that the ditch system and right of way is the property of the Springer Land Association, and of the individuals composing it; and as the notice of lien and bill of complaint used the language of the statute, and is sustained by the proofs, it is sufficient. Minor v. Marshall, 27 Pac. Rep. 481; Harrington v. Miller, 4 Wash. 808; Allen v. Rowe, 23 Pac. Rep. 901. Third. "And also the name of the person by whom he was employed, or to whom he furnished materials." The notice of lien says: "Claimant was employed to do said work by the Springer Land Association, C. N. Barnes, general manager, approved by C. C. Strawn, as president." It would be difficult to observe that requirement more fully than it is by this statement; and it is sufficient. Fourth. "With a statement of the terms, time given and conditions of his contract." The notice of lien avers that "the terms, time given, and conditions of said contract are those that fully appear in the copy of the said contract, which is attached hereto and made a part hereof." And, by reference to the contract and specifications filed and recorded with the notice of claim of lien as a part thereof, it will be seen that the contract provides that "said party of the first

part [appellee] agrees to begin work within ten days after signing the contract, and to complete the same on or before July 1, 1889. The party of the second part [the Springer Land Association] agrees to pay said first party for work so done at the rate of eleven cents per cubic yard, without classification; and the amounts due for said work shall be paid at the time and in the manner described in the specifications hereto attached." By reference to the specifications it is found as follows: "(15) Estimates. On or about the first day of each current month the engineer will measure and compute the quantity of material moved by the contractor during the preceding month. He will certify the amount to the company together with an account of the same at the price stipulated, which amount will be audited by the company without unnecessary delay, and the amount thereof, less ten per centum, retained, will be paid to the contractor, in cash, within ten days thereafter. The retained percentage will be held by the company as a guaranty for the faithful completion of the work, and will be paid in full with the final estimate upon the certificate of the engineer accepting and approving the work; it being expressly understood that the failure of the contractor to fulfill his obligations will work a forfeiture of this retained percentage to the company. The amount due the contractor under the final estimate will only be paid upon satisfactory showing that the work is free from all danger from liens or claims of any kind through failure on his part to liquidate his just indebtedness as connected with this work." The contract for the work was signed October 26, 1888. And it here appears that the terms of the contract were eleven cents per cubic yard for all earth removed, without classification; and the time given was ten days after the signing of the contract to the first day of July, 1889. The conditions of the contract were that the contractor should perform the labor

in accordance with the contract and specifications, and that the company should pay him, at the stipulated price, from the first to about the middle of each month, in cash, for the work performed during the preceding month, less the retained percentage, which was to be paid with the final estimate, when the work was completed, on a satisfactory showing that the property was then free from all danger from liens and claims through the fault or neglect of the contractor. But appellants contend with much earnestness that it was not a sufficient compliance with the statute to give the terms, time, and conditions of the contract by simply attaching the contract and specifications to the notice of claim of lien, as a part thereof, and rely upon it as sufficient notice to the world of the contractor's claim of lien on the property sought to be charged, and that it would be too much to require persons searching the voluminous record of the notice of claim of lien, the contract and specifications in a matter of this importance. But this contention can not be maintained, because the searcher, by the notice of the lien, has his attention called to the contract as a part thereof, and the contract calls his attention to the specifications as a part of it, and on reading the entire record he is given full and ample notice of all of its conditions. This is the most satisfactory manner in which the public could possibly be advised of the notice of an intention to claim a lien and to fix an incumbrance upon the property therein described. Knabb's Appeal, 10 Pa. St. 186; McLaughlin v. Shaughnessy, 42 Miss. 520; Phil. Mech. Liens, sec. 405. Fifth. "And, also, a description of the property to be charged with the lien, sufficient for identification." The averment in the notice of claim of lien is that he, Ford, files his claim "against all that certain ditch, canal, and reservoirs commonly known as the 'Cimarron Ditch,' and its accessories,— the said ditch beginning at a point where the Ponil

and Cimarron rivers meet to form the Cimarron river, thence continuing in a devious course eastwardly to a point on the Atchison, Topeka and Santa Fe Railroad about five miles northeast of the town of Springer, in Colfax county, territory aforesaid, being in length about twenty-six miles, and said ditch and land appurtenant thereto for right of way being of the uniform width of sixty feet,—together with all lateral ditches and reservoirs, and the land covered by and appurtenant to the same as aforesaid, as also twenty-two thousand acres of land, appurtenant to said ditch, the said land being also in said county, and under the ditch to be irrigated thereby, and described according to the townships and sections." Here follow the numbers of forty-six sections of land, according to the legal subdivisions of the government survey, and "all of which ditches, laterals, reservoirs, and lands as aforesaid are platted and laid out on the plan hereto attached and made part of this claim of lien." The same descriptions of all the property sought to be charged in the notice of lien are given and averred in the bill of complaint and in the answer and cross complaint of appellants, the Springer Land Association and the individuals composing it, and admitted as correct. There is no denial, either in the pleadings or in the proofs, that the description is in any particular erroneous. The description of the ditches, laterals, reservoirs, and right of way is amply "sufficient for identification," and to enable any one familiar with that locality to go upon, survey, and plat the same with sufficient accuracy, should it become necessary. The twenty-two thousand acres of land sought to be charged is described by legal subdivisions according to the statutes and rules prescribed for the surveys of the public lands of the United States. There is no other way in which a description of lands can be given more satisfactorily than by the legal subdivisions of the

public surveys.   Such a statement must be held a
specific description of the ditches, laterals, reservoirs,
right of way, and of the lands, and a full compliance
with all the essential requirements of the statute.   Af-
ter a careful consideration of all the facts, claims,
statements, and demands set out in the notice of claim
of lien, averments in the bill of complaint, and admis-
sions in the answer thereto, it is found, and so  held,
that the notice of claim of lien is well founded, and  is
in full and substantial compliance with all the essential
requirements of the statutes on that subject, and that
it has the force and effect to, and does, subject the
said ditches, laterals, reservoirs, and right of way, and
the real estate thereto pertaining, as described therein,
to the demands of said appellee.

The most difficult proposition in the whole case is
the effort on the part of the appellee to subject the
twenty-two thousand acres of land, not
included as a part of the ditch system, to
the force and effect of his lien as a security
for the satisfaction of his demands in pay-
ment for his labor in constructing the ditch and reser-
voir system.   This requires a most careful consideration
of the further proposition, viz., how far a lien becomes
effectual as to property beyond that upon which labor,
materials, and skill have actually been expended in
improvements and betterments upon a particular tract
of land.   Appellants contend, with much force, that
the lien can not extend and attach, under any possible
construction, to the twenty-two thousand acres: First,
because the improvements were not put upon it;  sec-
ond, because it belonged to the Maxwell Land Grant
Company at the time the contract was made with Ford;
and, third, because there is no averment in the notice
of lien or in the bill of complaint that the land was
necessary as and for "a convenient space about the
same, or so much as may be required for convenient

LIABILITY of own-
er for lien on
lands appurte-
nant.

use and occupation thereof," as provided by section 1522, supra. These three propositions will be considered together. The statute applicable to the first proposition is section 1529: "Every building or other improvement mentioned in section 1520 constructed upon any lands with the knowledge of the owner, or a person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this act, unless such owner or person having or claiming an interest therein shall within three days after he shall have obtained knowledge of the construction, alteration or repairs, or the intended construction, alterations or repairs, give notice that he will not be responsible for the same by posting a notice in writing to that effect in some conspicuous place upon said land or upon the building or other improvement situate thereon." So much of section 1520 as applies here is as follows: "Every contractor, subcontractor * * * or other person having charge * * * of any building or other improvement as aforesaid, shall be held to be the agent of the owner, for the purposes of this act." This action is purely statutory, and the purpose here in quoting in extenso from these sections is to give force and effect, in so far as possible, to the legislative intent in enacting the mechanic's lien laws, and to arrive at proper and just conclusions therefrom as applied. to facts in the record. The plat of the land referred to in the notice of lien and in the pleadings as giving a description of the property sought to be charged is omitted from this record, and it is not clear from the record just what sections of the land the line of the ditch passed over; but that it does traverse some of them is very clear. Though in the construction of a ditch the improvements may be limited to the land and

the right of way, sixty feet in width and twenty-six miles in length, yet it is clearly apparent from the record that this ditch and reservoir enterprise was intended to, and did, improve and enhance the value of all the lands to be irrigated by it. In the contract made by the Maxwell Land Grant Company and the predecessors in interest of the Springer Land Association it is stated that "the party of the first part, with a view of selling at an enhanced value certain land, amounting to about twenty-two thousand acres"—the same lands here in question,—for and in consideration of certain perpetual water rights and privileges, and for a certain part of the proceeds to be derived from the sale of the lands, when sold, "agrees to and with the parties of the second part that he [the representative of the Maxwell Company] will reserve, set apart, and hold from sale, except as hereinafter provided, said twenty-two thousand acres of land under the ditch system hereafter provided;" and the parties of the second part agree to expend the sum of $60,000, or so much as might be necessary, without delay, to complete the ditch system, as a consideration for the water rights, right of way, and for their share of the proceeds from the sale of the lands when sold. Appellants, the Springer Land Association and its associates, in their cross complaint set out this contract and made it a part thereof; averred that they had sustained damages in large sums on the ground of the alleged failure of Ford to comply with the terms of his contract, and to complete the same, in that they had, at great expense, secured purchasers for the land at good prices, but that by reason of appellee's lien having been filed they could not complete the sale, and that they had, at great expense, in the spring of 1890, established a "model farm" adjacent to, and to be irrigated by, said ditch system. It is clearly apparent from all the pleadings and proofs in the record that the only object in constructing the ditch and reservoir

system was to improve and enhance the value of and render marketable the said twenty-two thousand acres of land. The appellants admit in their answer, and aver in their cross complaint, the execution of the contract, and that the Springer Land Association was the successor in interest therein. The Maxwell Land Grant Company, its trustees and agents, had full notice of the Ford contract, and had ample knowledge that the same was being executed by Ford, as the original contractor; and it is nowhere contended that it, or its agents or trustees, gave any notice that the company or its trustees would not be responsible for the work.

Appellants contend that the land can only be subjected to the lien by a showing that it is "required for the convenient use and occupation of the improvement," and then only "if at the commencement of the work * * * the land belonged to the person who caused said improvement or structure to be commenced;" there being no allegation in the bill of complaint that the said land was so required. The claim of lien alleges that the land is appurtenant to the ditch, "and under the ditch to be irrigated thereby, and described by sections and townships." And the bill of complaint also alleges the same fact, and this is admitted by the answer. It was so "determined by the court below on rendering its judgment," and the decree ordered the sale of so much of said twenty-two thousand acres of land as may be necessary to satisfy the demands of the appellee. This objection was raised for the first time in this court, and for that reason, if nothing else, it is not well taken. All the proofs go to show that the land is appurtenant to, and to be benefited by, the ditch. The term "so much as may be required for the convenient use and occupation thereof" means all the land benefited, and the value of which is increased or enhanced by the improvements actually made upon the

*[margin note: OBJECTION to notice of lien too late, when.]*

land appurtenant and adjacent thereto, and for which such improvements are made at the instance, knowledge, or consent of the owner or reputed owner thereof. A ditch requires much more land for a convenient space, use, and occupation than a house, wall, or fence, and a lien will attach for the construction of either; and, no one would contend that the space would be limited to the land actually occupied by either. A lien may attach for the planting of a fruit orchard, and it could not be contended that only the space actually occupied by each tree would be subjected to the effects of the lien, but it would attach to the whole tract upon which the orchard was planted. To hold that this lien attaches only to the ditch system, twenty-six miles long and sixty feet wide, would be, in effect, to render the security for the payment of appellee's demands practically valueless, and to defeat the very spirit and intent of the law on which he had the right to rely for protection to secure payment for his labor. When the legislature enacted the mechanic's lien law it meant to provide security, and to say to the laborer, either skilled or unskilled, and to the material man, when he improves property with his skill, labor, or material, that all the property so improved in value shall be held by him as security until his demands are paid in the manner provided by the statutes. The following authorities are cited in support of this proposition: Davis v. Auxiliary Co., 9 S. C. 204; Roby v. University of Vermont, 36 Vt. 564; Vandyne v. Vanness, 1 Halstead, N. J. Eq. 485; Nelson v. Campbell, 28 Pa. St. 156. In Green v. Chandler, 54 Cal. 626, it was held that all the land was subjected to the lien, but there was no allegation in the complaint that it was necessary as a convenient space, and that the proof to that effect was not sufficient without such allegation to sustain the judgment, but it is alleged in this case in the lien claim, which is made a part of the bill of complaint, and al-

leged therein and admitted in the answer, that the land is appurtenant to the ditch. The court below found and determined, on rendering the judgment and decree, that the twenty-two thousand acres were "required for convenient use and occupation thereof;" and it is sustained by the proofs, and is sufficient, and the lien does attach to and subject the said twenty-two thousand acres to the effect thereof.

It is contended by the appellants that, even if the lien does attach and become effectual as to this land, it is excessive, because the forty-six sections described make twenty-nine thousand, four hundred and forty acres. This is on the theory that all the sections were full, and that each section contained six hunded and forty acres; but there is no proof to sustain that conclusion. Appellants admit in their answer "twenty-two thousand acres of land in said county and under said ditch, and to be irrigated thereby, and described as follows:" Then follows the sections by number, township, and ranges according to the government surveys. And they are now estopped from setting up that these sections contain more than the quantity they admitted in their answer. The description shows that about sixteen of these sections are bounded by the northern and western range lines; and Revised Statutes, United States, section 2395, provides that: "Where the exterior lines of the township which may be subdivided into sections or half sections exceed or do not extend six miles, the excess or deficiency shall be specially noted and added to or deducted from the western and northern ranges of sections or half sections in such townships, according as the error may be in running the lines from east to west or from north to south." While the court is asked to presume that all the forty-six sections contain the legal quantity, it may, in the absence of any other proof than appears here, with equal pro-

*QUANTITY of land: government survey: admissions of answer: estoppel: presumption.*

priety presume that the discrepancy is accounted for by
the deficiency in legal quantity by the statute and rules
of government surveying. Besides, quantity in the
description of land is not the governing rule as against
definite descriptions by metes and bounds or by name
and number. In Jackson v. Moore, 6 Cow. 706, "the
conveyance purported to include two tracts of land,
being townships number 3 in the fifth range, and, also,
number 4 in the sixth range, to be six miles square,
and containing twenty-three thousand and forty acres
each, and no more; but, as these tracts were in fact
six by eight miles in size, the court held that the whole
passed.

"SUTHERLAND, J., in delivering the opinion, said:
'It is perfectly settled that when a piece of land is con-
veyed by metes and bounds, or any other certain
description, all included within those bounds, or that
description, will pass, whether it be more or less than
the quantity stated in the deed. And where the
quantity is mentioned, in addition to a description of
the boundaries or other certain designation of the land,
without an express covenant that it contains that
quantity, the whole is considered as mere description.
The quantity, being the least certain part of the
description, must yield to the boundaries or number,
if they do not agree.'" Stanley v. Green, 12 Cal.
148. "While there may be a mistake respecting the
courses and distances as to the boundaries of a tract of
land, or as to the quantity of acres or leagues it con-
tains, there can be none when its extent is defined by
permanent natural monuments." De Arguello v.
Greer, 26 Cal. 616; Wadhams v. Swan, 109 Ill. 46;
Ufford v. Wilkins, 33 Iowa, 110. "The mention of
the quantity of land conveyed may aid in defining the
premises, but it can not control the rest of the descrip-
tion. Neither party has a remedy against the other
for the excess or deficiency unless the difference is so

great as to afford a presumption of fraud." 2 Devl. Deeds, sec. 1044. And where land is described by government survey and by metes and bounds as containing a given number of acres the words as to quantity are held merely as descriptive. Hatch v. Garza, 22 Tex. 177; Belden v. Seymour, 8 Conn. 18; Wright v. Wright, 34 Ala. 194. The general rule in such cases is that, where quantity is given in a conveyance without an express covenant that the exact number of acres only shall pass, the quantity specified, being less certain, is merely descriptive, and must yield to the description as to metes and bounds by permanent monuments and numbers according to the government surveys, they being the more certain. Doe v. Porter, 3 Ark. 57; Chandler v. McCard, 38 Me. 564; Dale v. Smith, 1 Del. Ch. 1; Jennings v. Monks, 4 Metc. (Ky.) 106. But it is not quite clear just what standing the Maxwell Land Grant Company had in the court below, or in this court, for the reason that the record here discloses the fact of the acceptance of service by its attorney, and its appearance in the lower court by attorney, but it does not disclose any pleadings of any kind in its defense.

Appellants contend in their seventh assignment that the amount found for appellee in the court below is excessive, in that from the amount allowed should have been deducted $8,000 on account of land agreed to be taken by appellee under his contract made between him and the Springer Land Association on October 25, 1888. Under the provisions of that contract, Ford agreed to select one section of land, of six hundred and forty acres, under the ditch, and to pay $8,000 for it, and to let that go as a credit and as a payment on his contract on the final estimate; and the Springer Association agreed to secure from the Maxwell Company a deed for the same, free from all incumbrances, and deliver

CONTRACT: tender: credit: evidence.

it to Ford. There is some proof as to the making of the deed by the Maxwell Company, but there is not sufficient evidence to establish such a tender of it to Ford by the Springer Land Association according to the terms and conditions of the contract as the law requires, and Ford was not bound in law to accept it and deduct that sum from his demands.

It is contended in the thirteenth assignment of error that before appellee can recover he should have satisfied and removed the liens filed by the subcontractors. The record shows that the subcontractors did not file liens until the appellants refused to pay the original contractor on the final estimates; and the original contractor filed his lien first, as he had a right to do, for all the money due him, including the several amounts due the subcontractors, and that was the reason then given for the refusal of payment on the final estimates; and there was due Ford at that time, on the May estimate, over $5,000, and over $12,600 on the final estimate. There is nothing to show that Ford had not promptly paid his subcontractors out of the money received, or that he was not responsible for the money due his subcontractors. On the contrary, he said he would settle with them as soon as he was paid, and this was before any liens were filed; and the filing of Ford's lien was brought about by reason of the failure of appellant the Springer Land Association to pay him according to the terms of the contract, and they should suffer for their own laches, and not Ford. It could not be maintained that Ford should or could pay the subcontractors until he received his money for the work. To hold otherwise would be both unreasonable and unjust.

*FILING of lien by principal contractor before satisfaction of liens of subcontractors.*

The sixth assignment is that it was error "in providing that the decree entered in said cause should operate as a personal judgment against each of the

appellants," the Springer Land Association and its associates. There are no authorities cited in the briefs of appellants or appellee in support of or against this proposition, and we have no statute on the subject. In equitable proceedings a court of chancery will, when it is possible, afford a complete remedy; but it has been held in a state where there is no statute authorizing a deficiency judgment in foreclosure proceedings that it can not be entered. Noonan v. Braly, 2 Black (U. S.), 499; Orchard v. Hughes, 1 Wall. 73. Our statute provides as follows: "Sec. 522. The said supreme and district courts, in the exercise of chancery jurisdiction, arising under all causes and matters in equity, shall conform in their decisions, decrees and proceedings to the laws and usages peculiar to such jurisdiction in this territory, and the supreme, circuit, and district courts of the United States." By the rules of practice for the courts of equity of the United States it is provided as follows: "(92) Ordered, that in suits in equity for the foreclosure of mortgages in the circuit courts of the United States, or in any court of the territories having jurisdiction of the same, a decree may be rendered for the balance that may be found due to the complainant over and above the proceeds of the sale or sales, and execution may issue for the collection of the same, as is provided in the eighth rule of this court, regulating the equity practice, when the decree is solely for the payment of money." This rule amended rule 8, which provided, among other things, that "final process to execute any decree may, if the decree be solely for the payment of money, be by a writ of execution, in the form used in the circuit court in suits at common law in actions of assumpsit." U. S. court rules. The bill of complaint contains a proper prayer in case of deficiency, and there was no error in the court below in entering a deficiency judgment and order for the writ of execu-

*Marginal note:* FORECLOSURE: deficiency judgment: pleading.

tion to issue in that event. Dodge v. Friedmans Savings & Trust Co., 106 U. S. 445.

Appellants contend, further, that "the amount decreed is unauthorized by the facts," on the ground that the Springer Land Association was not bound to pay simply on the estimates found by the engineer, for the reason that the amount certified by the engineer was to be "audited by the company" before payment, and that the word in specification 15 "meant to examine and adjust," and that this is a reserved power in the appellants, and that it had authority, under that reservation, to examine all statements and estimates made by the engineer before they were, under the terms of their contract and specifications, required to pay the amounts so certified, and that such estimates were not conclusive as against appellants. To maintain this contention the Springer Association would have had to send a man to examine, measure, and compute the work reported on by the engineer at the close of each month before any payments could have been made. It would require superhuman ingenuity to construe the contract and specifications to support this proposition. Such a construction is excluded by the very words and terms of the specifications. It says: "On or about the first of each current month the engineer will measure and compute the quantity of material moved by the contractor during the preceding month. He will certify the amount to the company, together with an account of the same at the price stipulated, which amount will be audited by the company without unnecessary delay; and the amount thereof, less ten per centum, retained, will be paid to the contractor, in cash, within ten days thereafter." The words "audited by the company," as here used, meant that the company would examine and compare each estimate and the vouchers with previous estimates, vouchers, and payments allowed and made by the

company. The word "audit" is defined in the Century Dictionary as meaning "to make audit of, examine, and verify by reference to vouchers; as, an account or accounts; as, to audit the account of a treasurer." Webster defines it to "compare the charges with the vouchers." There was nothing left for the company to do but to pay on the estimates furnished by the engineer, or to refuse to do so and declare the contract void as to that condition. It refused to audit and pay the estimates and it can not now be heard to plead its own default.

Appellants contend that the court erred in its findings of facts and conclusions of law, in that they were not sustained by the proofs. As before stated, the cause was referred to a special examiner, who took and reported the testimony to the chancellor, and he arrived at his conclusions on the facts and the law from the arguments and authorities cited by counsels and the facts contained in the record; and the whole record is here for review in just the same manner that it was before the chancellor, and it becomes the duty of this court to pass upon it without reference to the findings of fact and conclusions of law in the lower court. In this it is to be distinguished from the findings of facts by a special master appointed by the court by and with the consent of all parties in interest; and this court will pass upon the whole record, and review, affirm, or reverse the decision of the court below, where the reference was to an examiner only. The master who sees the witnesses, hears them testify, and observes their manner while upon the stand is supposed to be more competent to determine and pass upon their credibility, and arrive at a correct conclusion as to the facts, than a chancellor from mere reading of the testimony; and where the chancellor sits in the case, and hears the witnesses testify orally, his find-

*FINDING of facts by chancellor: weight of evidence.*

ings are in the nature of the verdict of a jury, and will be so treated by the appellate tribunal, and will not be reviewed unless it is apparent from the record that such findings of facts are not sustained by a preponderance of the evidence to the same material facts in the case. There were a great many witnesses examined orally, and a vast number of depositions taken, and numerous exhibits offered on both sides; and it is impossible and impracticable in this opinion to review and rehearse the testimony found in the record. There are contradictions, criminations, and recriminations from almost the beginning to the close of the record, most of which were directed at and to the construction of reservoir number 7, on the part of appellants,—that it was not constructed in a substantial and workmanlike manner, and in accordance with the contract and specifications. The appellee offered witnesses to prove that the dam and reservior had been constructed in substantial compliance with the contract; and, while there are some contradictions to his proofs by witnesses for the appellants, it is not sufficient to overcome that of appellee, and, after a careful examination of all the evidence on this point, it is found that the work was done in substantial compliance with the contract and specifications. There seems to be little controversy as to the completion of the ditch, and the evidence shows that it was completed by Ford substantially as he agreed in his contract.

Efforts were made on the part of appellants to show that E. H. Kellogg, the supervising engineer, was during the greater part, if not all the time that the work was progressing, under the influence of Ford, and that his estimates were incorrect and fraudulent, and that he was incompetent; and to establish this, witnesses and expert engineers were put upon the stand to prove it. One engineer was brought from Chicago,

who spent some two months in "experting" the whole work for the Springer Land Association during the summer of 1889; and he reported, as the result of his investigations, descrepancies in the work, as is usually the case in the testimony of expert witnesses. He was in the employ of appellants, and did his work for them, and he was by no means a disinterested witness. As a general rule, there is no testimony so unsatisfactory or so unreliable in the every day affairs of life, or that is so misleading, or that results so disastrously to just and equitable conclusions in the homely affairs of business men as that of experts. The proofs utterly fail to establish that Kellogg was either dishonest or incompetent, or in any manner under the baneful influence of Ford or anyone else. Kellogg was the man mutually agreed upon to do the work by the Maxwell Land Grant Company and the Springer Land Association, and he was agreed upon by the Springer Land Association and Ford as supervising engineer, and placed in charge of the work; and officers and agents of the appellants were upon the ground and inspecting the work from its inception to its completion, and had ample opportunity to investigate and report any misconduct on the part of Kellogg, but there were no objections made by anyone to him until after difficulties arose between the parties. He was in constant communication with all the parties, and furnished them regular estimates from time to time, as his duties required. The perusal of the record will disclose the vast amount of work done by him, and it is found that he did it apparently with satisfaction to all concerned until after their difficulties came up, and after the work was about completed. The proofs show that Kellogg had been engaged for a great many years in constructing irrigating plants in different parts of the country, and it also shows that he gave general satisfaction in other work of a similar

character in this territory.   Before a court  will stamp a man as incompetent and a falsifier in his particular profession or line of business, after sustaining a good reputation as such for more than twenty years, the proofs must be positive and convincing to the contrary.   A character established for competency and honesty in a profession, occupation, or a particular line of business is a thing of value to any man, and it must not be brushed aside and held for naught on mere allegations and meaningless generalities.

In the view here taken of this case it becomes unnecessary to consider any of the other assignments of errors by appellants.

After a careful consideration of all the record, it is found that the weight of evidence sustains the findings of facts by the court below, and the judgment and decree is affirmed, with directions to the lower court to make such order as will carry the same into effect.

SMITH, C. J., and COLLIER, J., concur; HAMILTON and BANTZ, JJ., not sitting.